| | |
|---|---|
| 79 | 175 |
| f88 | 76 |
| f88 | 98 |

MARGARET SHARPLEY, ET AL. *v.* JOHN F. PLANT.*

1. EXECUTORS. *Sale of realty. Fraud.*

A sale of lands by an executor, under a decree of the chancery court directing it to be sold for cash, is void if by agreement between the executor and the purchaser a part of the purchase money be not paid but credited on a debt due from the purchaser to the executor as an individual; and a confirmation of a sale so made, upon a report concealing the facts, is fraudulent and does not validate the sale.

2. SAME. *Wills. Bond. Code* 1892, §1905.

The provision of a will authorizing the executor to administer the estate without bond does not dispense with the necessity of the bond required by code 1892, § 1905, directing executors selling the lands of their testators, under a decree of the chancery court, to execute bond for the faithful application of the proceeds; and a sale so made without bond is void.

3. SAME. *Good faith. Statute of limitation. Code* 1892, § 2760.

A purchaser at an executor's sale of lands who has not paid the entire purchase money, but who has been, by agreement, credited with a part of it on a debt due him from the executor individually, cannnot defend a suit for the land, after two years' possession following the sale, on the ground that it is barred by code 1892, § 2760, providing that actions shall not be brought to recover property sold by order of a chancery court, where the sale was in good faith and the purchase money paid, unless brought within two years after possession taken by the purchaser under such sale.

4. SAME. *Setting aside sale. Decree. Improvements.*

Where an executor's sale of lands is sought to be vacated because the purchaser did not pay the purchase money as required by the decree under which the sale was made, and the court found that he did not so pay all of it, but, by agreement, credited a part on a debt due him by the executor individually, it is error to order title to vest in the purchaser upon his paying complainants (the heirs of the testator) the unpaid part of the purchase money and con-

*This case was decided at the March term, 1900, and would have been reported in 78 Miss., had the decision not been suspended by suggestion of error.

demning the lands to secure such payment. The decree should have vacated the sale, declared the title in complainants, subject to a lien in the purchaser's favor for the part of the purchase money actually paid by him, allowing nothing for improvements put upon the land.

5. DEED OF TRUST. *Trustees. Substitution. Seal. Code* 1892, §§ 4079, 4080, 4081, 4082.

   Where a deed of trust provides for the appointment of a substituted trustee "under the hand and seal" of the beneficiary, an appointment in writing, signed by the beneficiary, not under seal, is invalid, notwithstanding the abolition of seals by code 1892, §§ 4079, 4080, 4081, 4082.

6. SAME. *Void sale. Purchaser. Rents. Improvements.*

   Where a sale of lands under a valid deed of trust is adjudged void, the purchaser who has been in possession thereunder is entitled to have the land charged with so much of the purchase money paid by him, as went to satisfy the deed, with interest, and all taxes paid by him, diminished by a reasonable rent of the premises, less improvements, but the allowance for improvements should not exceed the rents.

FROM the chancery court of Monroe county.

HON. BAXTER McFARLAND, Chancellor.

Miss Sharpley and others, appellants, were complainants in the court below; Plant, appellee, was defendant there. The purpose of the suit was to remove clouds from title to land. In April, 1888, W. B. Sharpley, complainants' ancestor, executed a deed of trust conveying all of his lands to one Weisel, as trustee, to secure a large debt to Stern Brothers. The deed provided that, if, from any cause, the trustee named became unable or unwilling to execute the trust, the beneficiaries, or their assigns, under their hands and seals, could appoint another. Sharpley, complainants' ancestor, died in October, 1888, leaving a will devising the lands to complainants. One Sims was named as executor, and, by the terms of the testament, he was to act without bond. The executor was, by the will, directed to manage and control the lands until the complainants became of age or married. Sims qualified as exec-

utor, and, in December, 1889, he petitioned the chancery court for a decree authorizing him to sell so much of the land as might be necessary to pay the then unsatisfied balance due on the debt secured by the deed of trust, and obtained a decree requiring the sale to be for cash. He made sale under the decree, but did not execute bond for the faithful application of the proceeds, as required by code 1892, § 1905. At said sale 578 acres of the land was bid off for $3,468 by one Tatum, in pursuance of a private agreement between the executor and purchaser by which Tatum was not to pay $925 of his bid, but, instead of so doing, he was to credit that sum upon an individual debt due him by the executor. He, however, paid to the executor the balance of his bid. Said sale was reported to the court as if the entire bid had been paid, and the sale was confirmed, and the purchaser, Tatum, took possession of the land, and there remained until his death. Appellee, Plant, is Tatum's sole devisee, and, as such, acquired the land. The debt secured by the deed of trust was assigned to one Scruggs, who released the 578 acres sold by the executor from the deed, leaving it a lien on the balance of the 1,174½ acres originally conveyed by it. Scruggs, the assignee of the debt, the original trustee being unwilling and unable to act, undertook to appoint one Paine as substituted trustee in the deed of trust, but did not affix a seal to the writing by which he sought to do so. Paine, in January, 1894, sold the land conveyed by the deed, less the 578 acres purchased at the executor's sale by Tatum, and Scruggs bought at the trustee's sale, afterwards conveying the same, by quit claim, to appellee, Plant. Other facts are stated in the opinion of the court.

The court below decreed a lien on the lands sold at the executor's sale in complainants' favor for the $925 of the purchase money not actually paid by Tatum to the executor, with interest, but denied complainants all other relief. The complainants appealed to the supreme court, and defendants prosecuted a cross appeal.

*Gilleylen & Leftwich, George C. Paine,* and *Alexander & Alexander,* for appellants.

The sale of the land by the executor was illegal and void, because the decree directing the sale failed to require any bond for the application of the proceeds of such sale and because none was given. It is claimed, however, that as the will of Sharpley, appointing Sims executor, relieved him from executing a bond as such, the court in directing the sale was justified in not requiring a special bond. This position is unsound, for the testator in waiving the execution of any bond by the executor, could only have referred to acts directed to be done under the will, and the sale of the land was not authorized by the executor, who could not sell under the will, but was compelled to procure such sale through the power of the chancery court. It will be seen by the will that the testator never contemplated that a sale of land to pay debts would be required. Section 2045, code of 1880 (see § 1905, code 1892) makes it imperative on the court directing a sale of land of a decedent by an executor or administrator to fix the amount of the bond to be given, and the execution of such bond is a condition precedent to a legal sale. This question has been passed on by several decisions of our supreme court, and in every case where sales have been made without bond and brought in question before this court such sales have been declared invalid. *Currie* v. *Stewart,* 27 Miss., 52; *Hamilton* v. *Lockhart,* 41 Miss., 460; *Clark* v. *Niles,* 42 Miss., 460; *Rucker* v. *Dyer,* 44 Miss., 591; 7 Am. & Eng. Enc. L., 208 and note; *Buckner* v. *Wood,* 45 Miss., 57. Appellants are not barred of any right to maintain their suit under § 2760, code of 1892, § 2693, code 1880, which was in force at that time.

To successfully set up the statute as a good defense, the prerequisites which it contains must exist. These are, first, a sale by order of a chancery court; second, made in good faith; third, purchase money paid, and, fourth, action brought within two years after possession taken by the purchaser. The ab-

sence of either of these requirements renders this section powerless as a defense.

Good faith is determined by the conditions up to and not what occurred after the sale. *Richardson* v. *Brooks*, 52 Miss., 118; *Cole* v. *Johnson*, 53 Miss., 94; *Morgan* v. *Hazlehurst Lodge*, 53 Miss., 665. The agreement between Sims, the executor, and Daniel Tatum, before the sale, was secret and collusive and gave Tatum an advantage over other bidders. Tatum knew the law or was charged with a knowledge of the same, and he must have known that when he became the purchaser under a secret agreement with Sims that he was not a purchaser in good faith. *Morgan* v. *Hazlehurst Lodge*, 53 Miss., 665.

Tatum was not a *bona fide* purchaser because he did not pay all the purchase money. Perry on Trusts, sec. 221, Plant, the appellee, Tatum's sole devisee and legatee under Tatum's will, being privy in estate, stands in no better position than Tatum. Schouler's Ex. & Adms., sec. 359; *McLeod* v. *Drommond*, 17 Ves., 153; *Monell* v. *Monell*, 5 John. Chan., 297; *Field* v. *Schuffeln*, 7 John. Chan., 157; *Porter* v. *Graves*, 104 U. S., 171; Scouler's Ex. & Adms., sec. 359, and cases cited.

The chancellor, by his decree, seemed to think that his court had power to impart life where none had ever existed before. The title to the land in controversy had never been legally divested out of appellants by the sale and the court had no power to take from them their title to the land except by a proceeding in accordance with the statute. *Root* v. *McFerrin*, 37 Miss., 17.

The appointment of Paine by Scruggs as submitted trustee was not made in accordance with the terms of the power of the appointment contained in the trust, and of course title was not divested by Paine's deed.

The question is not the construction of § 4079–4082, code 1892. By those sections the use of private seals is dispensed

with, and instruments without seals shall be good as if sealed, according to the intention of the maker. But the sections of the annotated code just referred to, do not repeal the law of powers as construed by common law courts. It is the law of the proper execution of powers that now comes into play, not the law of sealed instruments.

Such powers have been literally construed. The appointment must follow the power strictly. Perry on Trusts, sec. 602; *Cummings* v. *Parish*, 10 George, 412; *Bradford* v. *Jinkins*, 41 Miss., 328. One partner cannot appoint for the firm, nor does the authority of the firm to appoint, confer it on their assignee. *Clark* v. *Wilson*, 53 Miss., 119. Every condition for the appointment of a new trustee must exist. *Guion* v. *Pickett*, 42 Miss., 77. Removal from the state does not *per se* constitute inability to act. *Bonner* v. *Lessley*, 61 Miss., 392. The appointment must conform as to hand and seal to powers given in the trust, strictly, and we have no right to vary such a requirement. Perry on Trusts, sec. 287, *et seq.* Also secs. 511 *b*, 511 *c*. Hill on Trustees, secs. 177–185.

"The court cannot dispense with a seal to a writing in execution of a power when the party creating the power has required one." 21 Am. & Eng. Enc. L., referring to *Porter* v. *Turner*, 3 S. & R. (Pa.) Pepper's Will, 108; 1 Pars. Eq. Cases, pad. 445.

This court is not called upon to go into the reasonableness or unreasonableness of such a requirement made by the party creating the power. Suppose that Sharpley required that the appointment be under the hand and seal of his creditor, for the very reason that he desired to make such appointment difficult and to embarrass the exercise. · He may have done so to/ drive his creditor into a court of chancery to foreclose. Such reasons the law has always held good. Because he required it to be "sealed," how can the court say that requirement is in anywise affected by the statute abolishing seals? It is a question

of powers, not one of seals.    When the debt is uncertain, or in
dispute, a sale *in pais* will be set aside.    Perry on Trusts, sec.
602; 2 Minor's Insti., 237.

The purchaser is bound to know the full particulars and the
purpose of the power under which he purchases.    *Walker* v.
*Brunglead*, 13 Smed. & M., 723; Perry on Trusts, sec. 602(*g*)
p. 159.

The appellee (Plant) is in no better position than Scruggs,
his vendee, who it would not be contended was a *bona fide* pur-
chaser.    Plant not only had actual notice of all these defects,
the record disclosed them, with notice of which he was charged.
*Stewart* v. *Matheny*, 66 Miss., 21.

*E. H. Bristow* and *Mayes & Harris*, for appellee.

The objection made to the executor's sale, by complainants,
is that the decree of sale did not require the special bond pro-
vided in such cases by code 1892, § 1905; code 1880, § 2045, is
unsound.    We submit that such bond was not required under
the circumstances.    Sharpley's will expressly releases Sims,
both as trustee and executor, from giving any bond.

It would appear to be the better doctrine that when a testator
expresses so much confidence in the executor, named by him-
self, as to expressly relieve him from giving any security, this
would be held to govern every act which in the course of ad-
ministration he may be called upon to perform.    Crosswell on
Executors, 295; *Hasty* v. *Johnson*, 3 Me., 282.

A conclusive test as to whether a special bond under § 3045
of code 1880 shall be required, we submit is the amount of the
penalty of the executor's bond required by law under the pro-
visions of the will.    That penalty under § 1981, code 1880, as
construed in *Ellis* v. *Witty*, 63 Miss., 117, is the full value
of the estate, real or personal, or both, as may be committed
by the will to the executor.    In this case the bond would have
been in the penalty of the full value of both real and personal
estate.    From the bond in that penalty the executor in this

case is relieved. He, therefore, cannot be made to give a special bond in part of that penalty from which he is relieved *in toto*. The learned chancellor held in this case that, under the provisions of the bill, a special bond under code 1880, § 2045, was not required for the sale of lands under decree of court to pay debts.

But suppose the chancellor and ourselves are wrong in this position? We still submit that, under the uncontradicted and even admitted proof in this case, the defendant (Plant) and his testator (Daniel Tatum) went into possession of the land in controversy, the 578 acres, sold in good faith by the executor, under a decree of the chancery court, on December 24, 1890, the sale approved March 14, 1891, and the purchase money paid, and remain in possession more than two years thereafter under such sale of the property; they went into possession under said sale December 24, 1890, sale approved March 14, 1891, and have remained in possession ever since. This suit was brought February, 1897. The possession, then, for more than two years, after the sale by the executor, cures every possible error in the proceedings and sale, no matter how grave or fundamental. Under § 2693 of the code of 1880 (code 1892, § 2760).

Possession, under this statute, cures, even, lack of jurisdiction, failure to give notice; even violations of constitutional provisions. *Morgan* v. *Hazlehurst*, 53 Miss., 655; *Hall* v. *Wells*, 54 Miss., 289; *Jeffreys* v. *Dowdle*, 61 Miss., 504; *Summers* v. *Bradley*, 56 Miss., 10; *Bradley* v. *Villere*, 66 Miss., 399. And there is no saving as to infants, etc. *Summers* v. *Bradley*, 56 Miss., 10.

But complainants claim that this statute does not apply in this case, because, they charge, that the sale was not made "in good faith," and the purchase money was not "paid in full;" and their charge of bad faith is founded on the alleged failure to pay the purchase money. The burden is on them to prove such bad faith.

To answer this, we must look at the proof in the case, which we contend shows the utmost good faith on the part of all parties to the sale, and a legal payment of the purchase money; or, if any part of the purchase money was not paid in cash, the complainants are estopped, at least in this proceeding, against the purchaser of the lands at the executor's sale, to take advantage of it. It is proven that Daniel Tatum, defendant's ancestor, was an intimate friend of Sims, the executor; that Sims, understanding that there was a secret scheme to sacrifice the land, appealed to Tatum, a wealthy man, as a friend, to buy the land at $6 per acre; that Tatum, at first, consented, but, finding that he would have to borrow $1,000 to make up the price, withdrew his consent; that Sims, in order to induce him to stick to his original agreement, agreed that, if Tatum would bid the $6 per acre, he, Sims, would assume and charge himself with $925 of the $3,468, the $925 being the amount of a debt Sims owed Tatum; that, with this understanding, Tatum agreed to bid the $6 per acre; that, as late as the morning of the sale, Plant, as agent for Tatum, begged Sims to release him from his agreement and allow him the privilege of other bidders, i. e., to get the land as cheap as he could, but Sims refused to release him, and held Tatum to his pledge of honor; that Plant made but one bid, and that was when the land was about to be knocked off at $2.50 per acre; that ample time was given for any and all bidders; that complainant's friends and near relatives were present, some of whom were able to buy the land, but they made no bid. They all swear the sale was fair and open; and, finally, but for Tatum's agreement with Sims, the land would have been sold for $2.50 per acre.

We claim, first, that the purchase money was paid in full, and, secondly, that complainants are estopped to deny it.

1. Daniel Tatum, by his agent, Plant, bid for the 578 acres of land, at the executor's sale, $6 per acre, or $3,468. The

executor charged himself with this amount. He used it in paying the debts of the estate.

Is there anything actually fraudulent or unfair in an executor assuming payment of and charging himself of a part or even the whole of the purchase money of property sold by him under agreement with the purchaser? Certainly not. Of course, could it be shown that said agreement resulted in the sacrifice of the property, and its being bought in by the purchaser at a fraudulent figure, it would be fraudulent. But suppose, as here proven, it caused the property to bring twice as much as it would have brought without the agreement?

Certainly complainants are estopped to deny our title to the land by the record in the case.

The decree confirming the sale of the land rendered March 14, 1891, decrees that the executor has received the purchase money, $3,468.

The decree was final unless excepted to and falsified in due time. The executor was certainly concluded. The devisees, complainants in this case, were also concluded, unless they except in due time. 7 Am. & Eng. Ency. Law, 443–4–5–6–7, and cases cited.

But the record shows that other proceedings were had as to the sale; what were they?

On March 14, 1891, the executor filed his second annual account, charging himself with the proceeds of said sale of land, $3,468 and other moneys, and asking credit for debts paid, showing a balance of $704.17 in the hands of the executor for distribution. On the same day this second annual account was approved.

Two years afterward on March 4, 1893, Sims, as executor and trustee, filed a third report showing that the whole estate of Sharpley was finally settled; that nothing remained, either real or personal, to administer; or for the heirs or devisees, and asking to resign as executor and trustee.

To this report the complainants appeared by their solicitors

and excepted March 8, 1893, asking explanation of what had become of $704, balance shown by second annual account two years before and seeking to charge the executor with certain rent notes of one Carroll, and asking for a formal final account. The court, on these exceptions, in vacation, August 19, 1893, ordered a final account to be filed at the August term, 1893, of the court; but at the request of all parties, then and there decided the other exceptions, *i.e.*, as to Carroll's rent note, etc., in favor of the executor (thus leaving the second report with the $704 balance against the executor approved and outstanding.)

On September 7, 1893, as ordered, the executor filed a formal final account, correcting said second annual account, explaining the $3,468 purchase money of the land, and his personal assumption of the $925 thereof, and asking to be relieved from the said $925, and showing, if he is thus relieved, a balance in his favor of about $100.

To this final report complainants made no answer or exceptions. Even had complainants not been in court or not had any notice of this final account, it is *prima facie* correct. *Winborn* v. *King*, 6 Geo., 157; *Williams* v. *Campbell*, 46 Miss., 91. But, if the parties are already in court and pray for a final account, no further notice to them of such final account is necessary. *Fort* v. *Battle*, 13 Smed. & M., 133. And, thus being in court, they have failed to except to or answer said final account, filed on their petition, for over six years.

The present bill, filed four years after, does not pretend to be an answer or exception to the final account of the executor. The executor is not even made a party. It is a bill to set aside the sale of, and to recover from the purchaser, lands illegally sold by the executor. *Isom* v. *McGhee*, 45 Miss., 712; *Gray* v. *Harris*, 43 Miss., 421. Same principle: *Johnson* v. *Cooper*, 56 Miss., 608; *Stone* v. *Morgan*, 65 Miss., 247; *Joohnson* v. *Miller*, 4 Ga., 553; *Eppinger* v. *Richards*, 6 Ga., 540; *McFarlane* v. *Randle*, 41 Miss., 411.

The final account of an executor or administrator cannot be attacked collaterally at any time. Crosswell on Executors, 19–22. And parties must be diligent in attacking accounts, etc., for fraud. Crosswell on Executors, 298, 299; 8 Am. & Enc. L., 653.

The learned counsel make a point, as heretofore suggested, on the omission of the "scroll for seal" on the deed of appointment by Scruggs making George C. Paine trustee, in place of Weisel, the original trustee. There are several complete answers to the contention:

1. Private seals are abolished by our statute, and were when this trust deed and deed of appointment were executed. Code 1880, §§ 993–6; code 1892, chapter 120.

2. Private seals being abolished, and the trust deed requiring the substitution of the trustee to be made "under hand and seal," the only way in which compliance could be made with the requirements of the deed was simply to use the exact words, and nothing more, "under my hand and seal," which words were used. Under the law as it now stands, a "scroll" is not a "seal," and nothing else is a private seal. There is no such thing as a "private" seal; therefore, the word, "seal," used in the appointment is the only private seal that could possibly be affixed to the deed of appointment.

3. This is a proceeding in equity to vacate the sale of lands authorized by complainant's ancestor, the proceeds of which paid a debt of said ancestor. In such case, the use of the words, "given under my hand and seal," makes the instrument a "sealed" instrument. *McCarley* v. *Tippah County*, 58 Miss., 483.

4. Section 995 of the code of 1880, code 1892, § 4081, covers every conceivable kind of deed or instrument, whether of conveyance, or "power" or otherwise. Where a deed not under seal, like the one in this case, required the substitution of a trustee, "under hand and seal," § 995 provides that the failure to use "any semblance or representation of a seal by a private

person in making an instrument shall not in any manner affect it, nor in any way vary the rights of the parties to it."

5. The beneficiaries in the trust deed were made the agents of the grantor (Sharpley) to appoint a new trustee to sell the lands; and this court has held that in such case the grantor will not be allowed to recover the land 'in equity' on the ground of a defective execution of the power of conveyance by his agents." *McIvir* v. *Abernathy*, 66 Miss., 80.

6. Sharpley's heirs having had personal notice of the intended sale of the lands under the trust deed by the substituted trustee, Paine, and having made no objection thereto, are estopped to now set up a defective execution of the power of the appointment. The power in this case being created and conferred by Sharpley, the ancester of complainants (and not by law), any defective execution of it is cured by their failing to object when notified of the intended sale by the substituted trustee. 1 Story Eq. Jur., 96; *Miller* v. *Palmer*, 55 Miss., 343.

Argued orally by *C. H. Alexander*, for appellant, and by *E. H. Bristow*, for appellee.

CALHOON, J., delivered the opinion of the court.

In sales made by executors, administrators and all other trustees, *uberrima fides* is the inflexible rule of law. In making the sale the trustee "cannot bring others into his confidence, by reason whereof a private sale is made to them on the secret understanding that he is to take an interest or benefit." *McGowan* v. *McGowan*, 48 Miss., 553. This doctrine is apparently universal, and it is essential, in order to preserve integrity and good faith in the immense mass of business dealings among men, where confidence is reposed. In this view, there can be and is no difference or distinction drawn by the law between actual and constructive fraud. The law condemns the thing regardless of the motive. There can be, in the nature of things, no condonation of it, no plausible explana-

tion of it, no arguing out of it. The law is, as it ought to be, inflexible and unbending. The good intentions and honest purposes of the executor cannot vary the wholesome rule, which is bottomed on public policy. Certain it is that there was here a distinct, private agreement and understanding that $925 ₁of the individual debt of the trustee to the purchaser should be counted as cash in the payment of the bid to be made. This agreement was not disclosed at the sale, nor to the chancery court which confirmed it, and it made the sale void. If honest purpose and good intentions may prevail, the field of actual fraud and perjury becomes boundless. The sale of the 578 acres was therefore void, for the reasons given. If at this sale the whole bid of $3,468 had been paid in cash, it seems from this record that it would have paid off the debts of the testator, and left the minors the $596\frac{1}{2}$ acres remaining of the $1,174\frac{1}{2}$ acres undisturbed. But it is of no concern whether this be true or not. The result would be the same.

The purchaser in this case cannot, nor can the appellee, his devisee, who was his agent at the purchase, and familiar with the agreement and private understanding, avail of the two year's statute of limitations, applicable where "the sale is made in good faith and the purchase money paid," as provided by code 1892, § 2760, because here there was not "good faith" in the purview of the law, and the purchase money was not paid in the same purview. If $925 of the individual debt of the executor may be deducted from $3,468, cash bid, why may not $3,000 be so deducted? In matters of such general importance the statute cannot be evaded. There must be first good faith, and then the purchase money must be paid—every dollar of it, unless, perhaps, some trivial sum omitted by mistake or miscalculation.

The executor's sale of the 578 acres was also void because there was no bond for the faithful application of the proceeds of the sale of the land. Code 1880, § 2045; code 1892, § 1905, and authorities cited in the foot notes of both. The omission

to require such a bond is not authorized by the will. This conveys the lands to Sims, with specific directions to him to " hold and use them for the benefit of complainants, appropriate rentals to their maintenance and education, and partition to each, as she arrived at twenty-one years of age or married," the land, in kind, and divide any accumulated rentals. While the will does provide that no bond be required of Sims as executor or trustee, it is clear that the testator never had any idea that he should ever sell the lands. In fact, it shows that the fixed purpose of Mr. Sharpley was that he should never sell them, and the special bond was, therefore, an indispensible prerequisite to a valid sale. The decree below, as to this land sold by the executor, seems to vest the title in Mr. Plant, the devisee of the purchaser, if he will pay the $925 and six per centum annual interest to the minors; otherwise, it orders a sale to realize this money as a lien on the land. This was error. The decree should have annulled the sale and declared the legal title to be in the minors, but, inasmuch as those who come into a court of equity must do equity, this legal title should have been made subject to a lien for an amount to be ascertained by an accounting. This account should ascertain: (1) The sum total of $2,543, the amount of the bid actually paid, with interest added at the rate of six per centum per annum from the day of sale; (2) the rental value of the land annually from the day the purchaser took possession, with six per centum per annum interest from the last of each year, to which should be added the value of any timber sold by Tatum or Plant, with six per centum per annum from date of sale, the sum total of which, less taxes paid by Tatum or Plant, with like interest from their payment, should be credited on the total principal and interest of the $2,543, and, unless complainants paid any balance so found, the land should be decreed to be sold to pay it. Nothing should be allowed appellee for improvements.

We proceed now to inquire into the validity of the sale of the remainder of the 1,174½ acres of land made by Mr. Paine,

as substituted trustee appointed by Scruggs, who was the assignee of the Stern Brothers trust deed. At that sale, Scruggs, the owner of the note and trust deed, was the purchaser, at a bid of $622.50. This sale was made on January 27, 1894, and, on December 26, 1894, Scruggs, the purchaser, conveyed it, for $2,100 in cash, to the appellee, Plant, by a quitclaim conveyance; and thus Plant became the apparent sole owner of the entire patrimony of the two infants. The other 578 acres had been sold by the executor, Sims, on December 24, 1890, to Daniel Tatum, Plant's devisor. The whole 1,174½ acres were conveyed to the trustee in the trust conveyance, together with all the crops and about all the personal property of the grantor, Mr. Sharpley. This trust conveyance specifically provided that, if foreclosed, the crops should be first sold, then the stock, then the McBeth land, then the McMillan land, "then the balance, as may be necessary, in this order." "The balance" was the land here sued for. It further provides that, if Weisel, the trustee, became unable or unwilling to act, Stern Brothers, or their assignee, might appoint another trustee, "under their hand and seal."

The substitutionary appointment here was not under seal. *Strictissimi* is the rule in the execution of powers by a trustee under conveyance to him in trust. A grantor in such an instrument may clog its execution with any and all difficulties and prerequisites to sale which his imagination may conjure up, and they all become vitally essential to a valid sale. "There must be a strict adherence, not only to the substance of the power, but also to all the formalities required in its execution by the instrument. . . . If it is to be by deed, nothing but a deed will execute the power. . . . So, if the deed is to be sealed. . . . The general rule is strictly adhered to, that powers can be executed only in the mode and at the time and upon the conditions prescribed in the instrument creating the power or trust." Perry on Trusts, sec. 511 (*b*). In reference to the appointment of substituted trustees, Mr. Perry says:

" Where it is necessary to act under the powers thus given in the instrument of trust, it is of the utmost consequence that there should be an exact compliance with the power and authority as given.  .   .   .   If there is any irregularity as to the persons by whom the new appointment is made, or as to the manner in which it is made,  .   .   .   the new trustee will be incapable of exercising any legal authority over the trust property, and will be a trustee only *de son tort* if he interfere, and any purchaser of the trust property may find his title utterly worthless." Perry on Trusts, sec. 288; *Learned* v. *Matthews*, 40 Miss., 220; Brame & A. Dig., 820. " The conditions attached by the donor to the execution of a power must be complied with strictly, however unessential they may seem." 18 Am. & Eng. Enc. L., 837 and notes.

The sale was clearly void for want of a seal to the appointment of a substituted trustee.  The case of *McCarley* v. *Braid*, 58 Miss., 483, has no adverse relevancy to this.  Here the complaint is that the parties did not comply with the solemn contract in making the appointment in the execution of the power.  There cannot be, in the nature of things, any equitable estoppel of complainants in the case at bar.  Sharpley, the grantor in the trust instrument, would not himself have been estopped. *McPherson* v. *Reese*, 58 Miss., 750. Mr. Sharpley's answer to the suggestion of estoppel would be that: " The instrument between us was a contract.  We contracted at arm's length, and I stipulated expressly for seal to any appointment, as I had a perfect right to do, and you accepted the security with that condition, and you now claim under the contract, with a violation of that condition." Suppose the contract had stipulated that the appointment should be made with the picture or drawing of a horse opposite the name, would any court hold that this might be dispensed with in a sale *in pais?* There is no restriction on the power to contract, where no public policy is violated.  A grantor in a trust deed may hamper sales by any conditions he chooses, however tech-

nical or useless or eccentric they may seem, and may, even, have the purpose, in his requirements, to make resort to sale *in pais* so difficult and cumbersome as to make it probable that the beneficiary will proceed in chancery to foreclose. It is no answer to this to say that seals have been made unnecessary by law. "*Consensus facit legem.*" The inquiry is idle as to what seal should be affixed, because by law now there is no form of seal. Any device designed to represent a seal would be sufficient. *Whittington* v. *Clarke*, 8 Smed. & M., 485; 21 Am. & Eng. Enc. L., 884.

The sale being void, for the reasons given, Mr. Plant has no title, and the title is in complainants. We are strongly inclined to think that, by the proper application of payments, the mortgage debt was fully paid before the sale, and so it was void for this. This should be ascertained exactly, by a commissioner appointed for that express purpose. The lands are not chargeable for debts contracted after Mr. Sharpley's death. The proceeds of the sale of the 578 acres released from the trust by Scruggs must be held to have been appropriated, as the decree of sale required, to the mortgage debt. Mr. Scruggs' dealings with the executor and the estate are such as to make it certain that he is entitled to no consideration on the score of ignorance or the illegal character of the business transactions of the executor with him. On the coming in of the itemized report, if there be anything due on the mortgage, it shall be, with ten per centum interest, a lien in favor of Plant on this 596½ acres, and the same proceedings had as in the case of the 578 acres. Whether or not any sum be due on the mortgage, Plant shall have a lien for taxes paid by him, with six per centum interest per annum; and he shall be required to account for reasonable rents, as in the other case, against which he may offset improvements, but be allowed nothing for them in excess of rents.

*Reversed and remanded.*