HENRY N. WATSON ET AL. *v.* WINIFRED B. PERKINS.

[40 South. Rep., 643.]

1. MORTGAGES. *Deeds of trust. Substituted trustee. Appointment.*
    The power to appoint a substituted trustee in a deed of trust is personal and cannot be delegated or exercised by attorney, in the absence of express authority from the grantor for so doing.

2. SAME. *Sale. Void appointment.*
    If the appointment of a substituted trustee in a deed of trust be void a sale made by him thereunder will not confer title.

3. SAME. *Mode of appointment. Departure. Seal.*
    Where a deed of trust provided for the appointment of a substituted trustee by a designated party "under his name and seal," an appointment not under seal is void.

4. ESTOPPEL. *Election of remedies.*
    Before an estoppel by election of remedies can apply two inconsistent remedies for the assertion of a right arising from the same state of facts must have been available to the party and he must actually have elected between them.

5. SAME. *Concrete case. Alternate claim.*
    Where a complainant claimed land on the ground that a deed was void and in the same suit claimed it, in case the deed should be adjudged valid, because subrogated by contract to the rights of a defendant holding under it, there was no election of remedies.

6. SAME. *Offer to abide void sale.*
    Where a sale under a deed of trust was void the right of the grantor to vacate it was not lost by a rejected offer to abide the sale if certain designated relief be granted him.

7. MORTGAGEE IN POSSESSION. *Rents and profits. Accounting.*
    A mortgagee in possession because of the default of the mortgageor is only liable to account for rents and profits actually received, in the absence of willful wrong, neglect or fraud.

8. SAME. *Improvements.*
    A creditor who obtained possession of land by a void sale under a deed of trust securing his debt and who conveyed it to a third person is chargeable only with rents and profits actually received by him, and the purchaser is chargeable with rents and profits received subject to credit for improvements.

FROM the chancery court of Lowndes county.

HON. JAMES F. McCOOL, Chancellor.

Mrs. Perkins, the appellee, was complainant in the court below; Watson and others, appellants, were defendants there. From a decree in complainant's favor the defendants appealed to the supreme court.

In 1891 Mrs. Perkins, the appellee, was the owner of lands in Lowndes county. On February 14 of that year, she executed a deed of trust on said lands in favor of the Union Mortgage, Banking & Trust Company, in which one W. G. Wheeler was named as trustee. This deed of trust contained a provision as follows: "In the event of the death, resignation, removal or refusal to act, or of the inability or unfitness to act of the said W. G. Wheeler, trustee, or of any future trustee, and so often as the same may occur, the said party of the third part, his legal representatives or assigns, shall have the power to appoint a trustee in the place of one so dying, resigning, removing or refusing to act, or becoming unable or unfit to act, and all the rights, powers and authority herein granted to and vested in the said trustee shall be thereby vested in the trustee so appointed. The appointment of any trustee other than the one named herein shall be made by said third party or assigns under his hand and seal, either indorsed on these presents or on a separate instrument under said seal, which shall be recorded in said Lowndes county."

On May 3, 1897, default having been made in the payment of the debt secured by said deed of trust, Thomas J. O'Neill, assuming to act as substituted trustee under said deed of trust, sold the lands, and the Union Mortgage, Banking & Trust Company became the purchaser. The appointment of O'Neill as substituted trustee was not filed for record until after the sale, and was in words and figures as follows:

"And whereas it is stipulated in said deed of trust that if the trustee named therein should refuse, neglect, or be unable

88 Miss.—5

in any way to carry out the provisions of said trust upon the request and demand of the said the Union Mortgage, Banking & Trust Company, Limited, then the said the Union Mortgage, Banking & Trust Company, Limited, or assigns, might appoint another trustee in the place and stead of said W. G. Wheeler, thereby conferring upon said substituted trustee all the rights, powers and authority originally held by said W. G. Wheeler. And whereas the said Winifred B. Perkins and William H. Perkins, her husband, have failed to perform the conditions named in said note and said deed of trust; that is to say, have refused, neglected and failed to pay the seventeen hundred dollars provided therein. And whereas the said the Union Mortgage, Banking & Trust Company, Limited, has declared the entire debt secured by said deed of trust due and payable, and has requested the said trustee to take possession of all and sell the premises as provided in said deed of trust. And whereas the said trustee has neglected to perform the same and carry out the provisions of his trust, by reason of long-continued illness and consequent inability to attend to any business whatever: Now, therefore, the said the Union Mortgage, Banking & Trust Company, Limited, hereby appoints and substitutes in the place of said W. G. Wheeler, so refusing to act, Thomas J. O'Neill, of Columbus, Miss., as trustee, with full power to carry out the conditions of said trust as the said original trustee had, and instructs him to take possession of and sell said lands as provided in said deed of trust. In testimony whereof, the said company has hereunto set its hand and seal this 3d day of June, 1896.

"THE UNION MORTGAGE, BANKING & TRUST COMPANY., LTD.,
　　　　"*By Fred Ingraham, its Attorney in fact.*"

"STATE OF NEW YORK, COUNTY OF NEW YORK.

"On this 3d day of June, A. D. 1896, personally appeared before me C. W. Wagner, a notary public in and for said

county, Fred Ingraham, who acknowledged that he signed and delivered the foregoing instrument as attorney for the Union Mortgage, Banking & Trust Company, Limited, who acknowledged the execution of the same to be the voluntary act and deed of the Union Mortgage, Banking & Trust Company, Limited, by him, the said attorney, thereunto voluntarily appointed and duly qualified, for the purposes and considerations therein set forth. In testimony whereof, I have hereunto set my hand and official seal the day and year last above written.

"C. W. WAGNER,
"*Notary Public, New York County, N. Y.*"

This writing was duly recorded in Lowndes county.

To the original no seal either of the corporation or of the attorney in fact was affixed. Some time after the purchase by the Union Mortgage, Banking & Trust Company it went into possession of said land, and thereafter executed an agreement or contract of sale to appellant Watson, who had previously been in possession as the agent and representative of Mrs. Perkins. Watson continued in possession of the property and made payments in accordance with the terms of his agreement for several years on the property, and also made considerable improvements. On January 1, 1900, Mrs. Perkins filed this bill against Watson, the Union Mortgage, Banking & Trust Company, W. G. Wheeler, Fred Ingraham, and Thomas J. O'Neill, in which she alleged that Watson in fact acted as her agent and representative in entering into the agreement for the purchase of the property in question, and asked that the contract be held to be for her use and benefit, and that Watson be declared to hold said land as her trustee. The bill then proceeds as follows: "Although the amount claimed by said mortgage company and for which said property was sold was usurious and excessive to the amount of about $200, whereby all interest would be forfeited, and although said sale by

the said O'Neill, assuming to act as trustee, was illegal and void for the reasons hereinbefore stated, yet, as said agreement of purchase was made by her said agent for her benefit, and the same was to some extent the result of a compromise, she is willing to abide by it, and now offers to do so provided her rights are recognized and the amount due by her under said contract is credited with the sums paid by her said agent, and she is reinstated in the possession and enjoyment of her property. Complainant has made repeated demands of the said Watson that her rights in the premises be recognized and that she be allowed to carry out said contract made for her benefit, but he refuses to accede to such demand, refuses to recognize any of complainant's rights, refuses to surrender possession of said property, and wrongfully and unjustly claims to hold and enjoy the property as his own." After the filing of this bill, the notes of Watson, held by the Union Mortgage, Banking & Trust Company, were assigned to the New England Mortgage Security Company. Before taking the assignment of the notes, the latter company wrote to Thomas J. O'Neill, of Columbus, as to their legal status, and they were fully informed of this lawsuit, a copy of the bill having been inclosed to them. Afterwards, by leave of the court, the bill was amended, making the New England Mortgage Security Company a party defendant. This bill also asked that Mrs. Perkins be recognized as the principal under the executory contract made by her agent for the purchase of the property in his own name, and offered to carry out this contract provided her rights be fully recognized thereunder. The defendants, Watson and the New England Mortgage Security Company, answered, denying that Mrs. Perkins was entitled to any rights whatever under the contract of sale made by the Union Mortgage, Banking & Trust Company with Watson. Thereafter the bill was again amended, whereby Mrs. Perkins prayed that the pretended sale of May 3, 1897, be set aside as illegal and void, and that the defend-

ants be held liable for the full value of the rents and profits of said property. On the hearing by the chancellor the trustee's sale was declared void and an accounting was had, in which the New England Mortgage Security Company was allowed the full amount due on the mortgage debt, with ten per centum interest, and charged not only with all it had actually received from Watson, but in addition with all the rents that Watson himself had collected from the property. A general exception was filed to this accounting by the defendants, the New England Mortgage Security Company and Watson, which was overruled.

*T. J. O'Neill,* for appellants.

While our statute on amendments in proceedings is exceedingly liberal, it cannot I think be successfully claimed that we override utterly the wholesome doctrine of estoppel by conduct, and that a party even under our system cannot affirm a contract or sale by suit to enforce it, and then by amendment of his pleadings change front and deny the force and effect of such a contract or sale.

A party by actively affirming a contract or purchase as by suit, or by reception of money upon it, is estopped thereafter to deny its force and effect. Bigelow on Estoppel, 511.

Where a party *sui juris* reaffirms a voidable contract with knowledge of the facts, he will be bound by the reaffirmance and estopped to allege that it is voidable if the party has acted upon the ratification. *Id.,* 475.

One who having the right to set aside a conveyance as fraudulent, treats it as valid, cannot afterwards allege that it is fraudulent.

And in general where one accepts the terms of a contract or sale, or in award of damages, must accept the same in toto; he cannot accept a part and reject the rest or claim that the same was valid. *Id.,* 514.

Wherever the rights of other parties have intervened by reason of a man's conduct or acquiescence in a state of things about which he had an election, and his conduct or acquiescence or even *laches* was based on a knowledge of the facts, he will be deemed to have made an effectual election; and·he will not be permitted to disturb the state of things whatever may have been his right at first. *Id., 508*.

A party cannot take two inconsistent positions. He has a right either to rescind a contract on account of a breach of the other party, or to continue it in force; he thereby abandons the right to rescind. and is bound by the election so made.

In like manner a clause of forfeiture in a lease may be waived. The right of entry or forfeiture in a lease is governed by the general law. that where a man has a right to elect to do a thing to the injury of another, his election when once made is final and conclusive and he cannot afterwards alter his determination. *Cole* v. *Hines,* 32 L. R. A., 462.

A party in an action is bound by his pleadings.

A party is bound by his theory and presentation of his case. A party cannot get relief on one basis, and then seek a new chance to litigate on the suggestion that he has a defense which he did not see fit to rely on before. Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot after litigation has begun change his ground and put his conduct upon another and different consideration. He·is not then permitted to mend his hold. He is estopped from doing it by a settled principle of law. *Newell* v. *Mainderff,* 8 L. R. A., 442; *Ohio & Mississippi R'y Co.* v. *McCarthy,* 96 U. S., 696.

In a case where the remedies sought are so absolutely repugnant to each other, the plaintiffs ought to have made their election at once after they came to the knowledge of the facts. ·

Any decisive act of the party, with knowledge of his rights

and of the fact, determines his election in the case of conflicting and inconsistent remedies.

There cannot be any doubt of the principle that equity will not relieve a party apprised of his rights and deliberately confirming a former act. *Sanger* v. *Wood,* 3 Johns Chancery Reports, 421.

Where there are two methods of redress, based upon inconsistent theories however, these methods may differ; the party is put to his election, and his choice of either is a bar to the other.

Appellee had the right and it was her duty, having all the facts before her as the bill shows, to seek to set aside the sale of the substituted trustee (if not estopped by her presence at the sale in the person of her agent, defendant Watson, and participation in the sale by bidding, for the avowed purpose of forcing the property to bring the amount of her indebtedness), or to affirm the sale and seek the benefit of it by subrogation. She chose the latter course and is bound by her election, her first pronounced act of election being final and imperative. Ency. of Pl. & Pr., 364. Whenever the law supplies to a party two or more methods in a given case, based upon inconsistent theories, however these methods may differ either in the form or forum of procedure, or in the personality of the parties to several proceedings, the party is put to his election, and his choice of either is a bar to the resort of the other. A party by actively affirming a contract or purchase, as by suit or the reception of money upon it, is estopped thereafter to deny its force and effect. Bigelow on Estoppel, 511; *Thompson* v. *Strickland,* 52 Miss., 578; *Smith* v. *Walsh,* 63 Miss., 584.

*Alexander & Alexander,* and *George B. Power,* on same side for the New England Mortgage Security Company.

The sale by the substituted trustee was valid, notwithstanding the written substitution was not filed before the sale. This

point was made in the pleadings in order to squarely present the question that our statute requiring recordation of this substitution materially impairs the contract contained in the trust deed, and therefore is violative of the federal constitution. In view of the fact that this question has been presented in a former case to this court, and which ruled adversely to our contention, we will not elaborate it on this appeal.

Passing by for the present the estoppel arising out of the filing of the bill and its assertions, we say that Mrs. Perkins, under her own proof, is estopped to deny the validity of the executory contract of purchase by Watson from the New England Mortgage, Banking & Trust Company. This contract was made August 1, 1897. It will be noted that the sale made under the trust deed by O'Neill, substituted trustee, was made May 3, 1897, and during this interval the purchaser, Ingraham, who bought for the Union Mortgage Company, was in possession of the land with the right of the company unchallenged. Not only was its right unquestioned, but the only person who could question it, Mrs. Perkins, was openly acquiescing in the foreclosure and endeavoring to purchase the land through Watson from the Mortgage Company. She is irrevocably committed by her own testimony, or that of her husband, who acted throughout for her, and by her letters and by her conduct, to the fact that she knew that this purchase was being made and approved its terms, and in order to deceive the Mortgage Company, who would not sell direct to her, had the title conveyed to Watson.

It is true that the bill intimates that if Watson did not do certain things she would claim that the sale was invalid, but the bill itself imposed no sort of conditions on the Mortgage Company and made no charge against it, and is a clear ratification of the sale so far as the Mortgage Company is concerned.

It is well settled in this state that the purchaser under an

executory contract is estopped to deny the title of the vendor. And, as Mrs. Perkins alleges, and her husband testifies, that the purchase was made with full knowledge of all the facts for her benefit, she will be estopped to question the title of Union Mortgage Company. *Hardeman* v. *Cowan,* 10 Smed. & M., 486; *Champlin* v. *Dotson,* 13 Smed. & M., 553; *Cromwell* v. *Craft,* 47 Miss., 44; *McCarley* v. *Tippah County,* 58 Miss., 483; *Niles* v. *Davis,* 60 Miss., 750.

It was error in the decree to charge the rents collected by Watson against the New England Mortgage Company and in reduction of its notes. In the first place, only the occupant who recovers rent is chargeable with them. The rule as to who is chargeable with rents is the same in equity as it is in eject-ment, although there may be circumstances which vary the computation of the amount due. It is a universal rule that rents are chargeable as against the possessor who received them.

It would be wholly inequitable to have the Mortgage Com-pany charged with rents received by Watson, when it would not have been in any way benefitted by improvements made by him.

*Brame & Brame,* for appellee.

The substitution was not made or pretended to be made by the Union Mortgage, Banking & Trust Company, Limited, of London. On June 3, 1896, one Fred Ingraham signed and acknowledged a paper in the city of New York, reciting merely that he was the attorney in fact of the Union Mortgage, Bank-ing & Trust Company, Limited, of London; that W. G. Wheeler had refused and neglected to act as trustee, thereupon he assumed to substitute Thomas J. O'Neill as trustee.

It was not even attempted to be shown that Fred Ingraham was the attorney in fact of the Union Mortgage, Banking & Trust Company, Limited, of London, or that he had ever been given any power whatever to act for that company. But if

he had been duly constituted the attorney in fact for the corporation, the attempted substitution by him as such attorney in fact would have been void. The power of appointment was vested in the corporation, and this power could not be delegated by it to another. The rule *strictissimi juris* applies. *Hartley* v. *O'Brien,* 70 Miss., 825 (s.c., 13 South. Rep., 241); *Carey* v. *Fulmer,* 74 Miss., 729 (s.c., 21 South. Rep., 752); *Allen* v. *Alliance Trust Co.,* 84 Miss., 319 (s.c., 36 South. Rep., 285).

Nor is it pretended that the substitution was made under seal of the Union Mortgage, Banking & Trust Company, or even under the seal of Fred Ingraham, who claims to have acted as attorney in fact for that corporation. Although private seals are abolished, yet it was expressly held by this court in *Sharpley* v. *Plant,* 79 Miss., 175 (s.c., 28 South. Rep., 799), that where a trust deed provides for the appointment of a substituted trustee under the hand and seal of the beneficiary, an appointment in writing without seal is void. The rule *strictissimi juris* as applicable to cases like this is strikingly illustrated by this decision, wherein the court cites Perry on Trusts, sec. 288.

Under the act of 1896 (Laws, 105), as construed by this court, requiring the appointment to be made a matter of record before the sale, the sale in this case was void. *White* v. *Jenkins,* 79 Miss., 57 (s.c., 28 South. Rep., 570); *Hyde* v. *Hoffman,* subsequently decided by this court.

In *White* v. *Jenkins,* the sale was made under two trust deeds, both of them being executed prior to the passage of the act of 1896. In *Hyde* v. *Hoffman,* the question was fully argued and carefully considered, and the court maintained its construction upon the ground that it might be made known to the world before the sale that the substituted trustee was properly appointed.

In *Shipp* v. *Building Association,* 81 Miss., 17 (s.c., 32

South. Rep., 904), the subject was again considered and the same conclusion reached, the decrees being reversed because alone of the failure to record beforehand the appointment of the substituted trustee.

It is so plain that the statute in question does not seek to impair the obligation of the contract, but is a mere change of the remedy, that we hardly consider it necessary to make any argument in support of its constitutionality. The earlier decisions in this case are collected in George's Digest, pp. 134, 135.

There is in the federal constitution no prohibition against retroactive laws, and it is settled in this state that the legislature may pass such laws, provided they do not impair the obligations of contracts nor affect vested rights. On the general subject of the power of the legislature to enact remedial legislation such as that under consideration, we refer to *Musgrove* v. *Railroad Company,* 50 Miss., 677; *Chaffe* v. *Aaron,* 62 Miss., 29 (6 Am. & Eng. Ency. Law, 943, 947, 948.

It is a general rule that the title to land cannot be divested by estoppel *in pais.* Mrs. Perkins was and is the owner of the land. She gave a trust deed on it, authorizing its sale by a trustee upon certain specified conditions and contingencies. Those contingencies have not happened and the conditions have not been complied with. The attempted sale made by Mr. O'Neill, assuming to act as substituted trustee, was and is absolutely void. He is a stranger, an intermeddler. His acts were *brutum fulmen,* and the deed by which he purported to convey the title to this land to Fred Ingraham is waste paper. To hold that the complainant is estopped would be to deprive her of this property and vest title in another without authority and without the formalities required by law. *Turnipseed* v. *Hudson,* 50 Miss., 429; *Sulphine* v. *Dunbar,* 55 Miss., 225; *Staten* v. *Bryant,* 55 Miss., 261; *Madden* v. *Railway Company,* 66 Miss., 258 (s.c., 6 South. Rep., 181); *Houston* v. *Witherspoon,* 68 Miss., 190 (s.c., 8 South. Rep., 515); *Lucas* v. *Mort-*

*gage Co.,* 72 Miss., 366 (s.c., 16 South. Rep., 358); *Thomas* v. *Romano,* 82 Miss., 256 (s.c., 33 South. Rep., 969).

Argued orally by *C. H. Alexander,* for appellants, and by L. *Brame,* for appellee.

HARPER, Sp. J., delivered the opinion of the court.*

The deed of trust under which the sale now under consideration was made provided that the holder of the secured notes should have the power to appoint a substituted trustee. This record shows that the holder of these notes, the Union Mortgage Company, did not undertake to appoint the substituted trustee who made this sale, but that he was appointed by one Ingraham, who purported to act as an attorney in fact for that company. But since such power of appointment has been held to be purely personal, and one that cannot be delegated, the attorney in fact of the holder of these notes had no right to name a substituted trustee, and, such appointment being void, the sale made by such trustee was void. *Allen* v. *Alliance Trust Co.,* 84 Miss., 319 (36 South. Rep., 285); *Carey* v. *Fulmer,* 74 Miss., 729 (21 South. Rep., 752); *Hartley* v. *O'Brien,* 70 Miss., 825 (13 South. Rep., 241). This trust deed also provided that the appointment of a substituted trustee should be made by the holder of said notes "under his name and seal." There was no seal, either of the holder of the notes or the attorney in fact, attached to the appointment of the substituted trustee herein, and for that reason, also, his appointment and the sale made by him was void. *Sharpley* v. *Plant,* 79 Miss., 175 (28 South. Rep., 799; 89 Am. St. Rep., 588).

The doctrine of election has no application to this case. As we understand that doctrine it applies only where a party, having elected to pursue one of two inconsistent remedies open

---

*WHITFIELD, C. J., because of relation to some of the parties, recused himself, and W. R. Harper, Esq., a member of the supreme court bar, was appointed and presided in his place

for the assertion of a right arising from the same state of facts, is thereby estopped from afterwards pursuing the other. But here complainant is seeking but one remedy or relief, the recovery of the land in question, and it matters not upon how many independent grounds she may put her right so to do. She says, in effect, in her amended bill, "I am entitled to the land because the trust sale is void." She further says, "I am entitled to the possession of the land by subrogation, if the trust sale be not void." And she might have proceeded with any number of other grounds or independent state of facts to show that she was entitled to such possession. It is true that the assertion of one right may sometimes be held to indicate an intention to abandon another. But this is purely a question of intention, and is not governed by the doctrine of election of remedies, but by the doctrine of waiver of rights. Complainant's original bill, to which we must look to determine whether there was a waiver of the right to set aside the void sale, sets out that defendant Watson, who bought from the Union Mortgage Company, the purchaser at the trustee's sale, was the agent and bought for the use and benefit of complainant, and asks that she be subrogated to all of his rights under the contract. Then, in sec. 12, it proceeds as follows: "Although the amount claimed by said mortgage company, and for which said property was sold, was usurious and excessive to the amount of about $200, whereby all interest would be forfeited, and although said sale by the said O'Neill assuming to act as trustee was illegal and void for the reasons hereinbefore stated, yet, as said agreement of purchase was made by her said agent for her benefit and the same was to some extent the result of a compromise, she is willing to abide by it, and now offers to do so provided her rights are recognized, and the amount due by her under said contract is credited with the sums paid by her said agent, and she is reinstated in the possession and enjoyment of her property." Had such a provision been con-

tained in a solemn contract between the parties, there would have been no ratification of the void sale until the annexed conditions, valid in themselves, had been complied with. Under the broadest application, no higher rights could accrue to defendants by the doctrine of waiver than would have arisen from contract. The offer to waive was expressly conditional, and the right to make a conditional waiver is quite as clear as the right to make a conditional contract.

It may be true that the defendant, the New England Mortgage Company, purchased these notes with reference to the status fixed by complainant's bill, but it had full notice of that bill and of its legal effect. Surely the two defendants, Watson and the New England Mortgage Company, ought not to be heard to complain; for they both not only refused to accept and act upon the offer made in the bill, but denied to the last the facts upon which subrogation was asked, and sought by every legal means to prevent the conditional waiver from becoming effective. With such an explicit declaration in the bill of complaint of the conditions upon which a ratification and affirmance of the void sale would be given, it is difficult to understand how the New England Mortgage Company could have been misled, and if it relied in any measure upon this bill as a ratification of the void sale, it is still more difficult to understand why it resisted in every legal way the consummation of the express conditions upon which complainant stated she would waive her right to set aside the sale. When the two defendants, Watson and the New England Mortgage Company, had filed their answer, denying that complainant was entitled to be subrogated to the benefits of Watson's contract, and thus rejected the proffer made in the bill, complainant amended her bill and sought to base her right to relief upon the additional ground that the trustee's sale was void. Under the facts of this case it is clear that equity and the ends of justice required that

she be allowed so to do, and defendants cannot now be heard to complain.

The court below properly declared the trust sale void and ordered an accounting, and there is an appeal from this accounting. The Union Mortgage Company became a mortgagee in possession by operation of law, and from no fault of its own, but because of the default of complainant, and while so in possession in perfect good faith entered into an agreement to sell the land in question to defendant Watson. The doctrine is well established in Mississippi that under such circumstances such mortgagee is only liable to account for the proceeds actually received from the land, and not for what ought to have been received, in the absence of willful wrong, neglect or fraud. *Building Association* v. *Houston,* 81 Miss., 386 (32 South. Rep., 911). The mortgagee here having sold to Watson in good faith, and having put him in possession of the land before this suit was filed, and, so far as this record shows, having used due diligence to collect all payments as they fell due, and having been fairly successful in such collection until after it became doubtful, from the filing of the amended bill, whether Watson would receive a good title if he made the payments, it seems clear that it should not be held responsible for his default. This attack upon its title put the Mortgage Company in a position where it could not repudiate its contract with Watson with safety, nor enforce it with effect.

The accounting proceeded upon a basis erroneous in law, in that it charged the Mortgage Company with all rents collected by Watson, whether it had received them or not, and we think this error of law is sufficiently presented in the record for our consideration. We therefore reverse and remand this cause for a new accounting, and direct that the Mortgage Company be charged only with such sums as it actually received from Watson, that Watson be charged with all proceeds from the land received by him and not paid to the Mortgage Com-

pany, and that Watson, and not the Mortgage Company, be credited with the value of all improvements made by Watson.

*Reversed and remanded.*