(No. 22684.

JOSEPH G. DILLON, Appellant, *vs.* ELBERT E. ELMORE *et al.*—(BENJAMIN G. KILPATRICK, Appellee.)

*Opinion filed June 18, 1935—Rehearing denied October 2, 1935, as being a second petition by same party.*

STONE, C. J., and SHAW, J., dissenting.

CONCANNON & DILLON, for appellant.

KIRKLAND, FLEMING, GREEN & MARTIN, (WILLIAM WILSON, B. S. MARIMON, and L. W. TUESBURG, of counsel,) for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

A certificate of importance granted by the Appellate Court for the First District brings this case here by appeal. That court affirmed the decree of the superior court of Cook county, which had overruled a demurrer to the intervening petition of appellee, Kilpatrick, as successor trustee and had dismissed complainant's bill for want of equity.

Appellant, Joseph G. Dillon, for himself and all other bondholders, on March 11, 1932, filed a bill to foreclose the lien of a trust deed in the superior court of Cook county. The trust deed had been made to the Englewood Trust and Savings Bank, as trustee. It conveyed improved real estate in Chicago and was executed December 26, 1923. It secured 175 bonds for $1000 each, due in ten years, and their accompanying interest coupons. Title to the bonds was to pass by delivery except as to such as were registered on the books of the trustee. Appellant had twelve bonds. He named one holder of five of the bonds, one of six, and alleged that the holders and owners of the remaining bonds were widely scattered persons unknown to him. His bill prayed a foreclosure, and, if necessary, that a successor trustee be appointed by the court and made a party to the suit. Kilpatrick's intervening petition was filed by him as successor trustee on December 12, 1932. By it he asked that appellant's bill be dismissed. Appellant's demurrer was overruled and leave was denied him to file a supplemental bill. He appealed to the Appellate Court for the First District, with the results indicated.

Appellant's bill alleged a default in interest maturing on all the bonds December 26, 1931; that this default con-

tinued more than sixty days, and that appellant had elected to declare the whole of the principal indebtedness and interest to be due. A default was also alleged in payment of general taxes on the mortgaged real estate for 1929 and 1930. It was charged that on February 24, 1932, the real estate was sold for non-payment of a special assessment amounting to $223.25. The bill charged that on June 9, 1931, the West Englewood Trust and Savings Bank, which had previously qualified as a trust company, was found by the Auditor of Public Accounts to have its capital so impaired that such impairment could not be made good. On that day the Auditor accordingly appointed Irwin T. Gilruth receiver of the bank, which appointment was approved by the superior court of Cook county on July 22, 1931. It is alleged that Gilruth qualified, and pursuant to section 11 of the Banking act, on behalf of the bank, resigned the trust here in question on March 7, 1932. The bill alleged that by reason of the appointment of the receiver the bank became, and was, "disqualified from acting as trustee under the terms of said trust deed * * * and that no person has been appointed to succeed" it. The trust deed was made a part of the bill.

Appellee, Kilpatrick, alleged in his intervening petition the resignation of the bank as trustee by the receiver; his own appointment as successor trustee on June 17, 1932, by the holders of a majority in amount of the 175 bonds; that the filing of appellant's bill four days after the receiver's resignation on behalf of the bank was premature and contrary to article 12 of the trust deed; that Kilpatrick entered into possession and had collected rents from the mortgaged premises from June 18, 1932; that on June 20, 1932, one bondholder, by a written instrument delivered to Kilpatrick, had declared the whole indebtedness secured by the trust deed due and payable, and had thereby requested Kilpatrick to foreclose the trust deed for the benefit of the owners or holders of all of the unpaid bonds secured thereby, and

had also agreed to indemnify Kilpatrick against the expenses that might thereby be incurred; that on June 20, 1932, Kilpatrick had filed such foreclosure suit; that Dillon's bill shows on its face that the exclusive right of action to foreclose is in the trustee duly appointed under the trust deed, which in article 11 provides: "The exclusive right of action hereunder shall be vested in said trustee until refusal on its part to act, and no bondholder shall be entitled to enforce these presents in any proceeding in law or in equity until after demand has been made upon the trustee, accompanied by tender of indemnity, as aforesaid, and said trustee has refused to act in accordance with such demand. Said trustee shall not be bound to recognize any person as a bondholder until his bonds have been deposited with said trustee and until his title thereto has been satisfactorily established." It is also alleged in this petition that the bill alleges no demand upon the trustee to foreclose; no demand upon the West Englewood Trust and Savings Bank, or Irwin T. Gilruth as receiver, to resign the trusteeship created by the trust deed; no refusal by that bank to foreclose the lien of the trust deed, and no refusal by Gilruth, as receiver, to resign the trusteeship. It then quotes from the bill the facts alleged with reference to the Auditor of Public Accounts taking action in the matter of the bank and the appointment of Gilruth as receiver.

Appellant, Dillon, contends that equity will not require the appointment of a trustee merely to foreclose a trust deed, for the reason that it does not require the doing of a useless thing; that the right of a party to maintain a bill must be determined as of the date the bill is filed; that the office of trustee became either vacant, or practically so, when the receiver was appointed for the trustee bank; that Kilpatrick was not appointed successor trustee in accordance with the terms of the trust deed, and that the chan-

cellor erred in refusing leave to appellant to file a supplemental bill.

Appellant's contention that he had an absolute right to file his original bill makes it necessary to determine the effect of article 11 of the trust deed.

Appellant relies upon *Dorn* v. *Colt,* 180 Ill. 397, and *Cheltenham Improvement Co.* v. *Whitehead,* 128 id. 279, to support the contention that an owner of a bond may bring foreclosure proceedings in his own name. But in neither of the two cases did the trust deed impose restrictions upon the holders of the bonds or notes secured by the lien of the trust deed. The contract between the mortgagor, the bondholders and the trustee are contained in the trust deed before us. It prescribes the things to be done when a default occurs on the part of the debtor. A compliance with the terms of the trust deed is a necessary and legitimate requirement, and these provisions are enforcible as conditions precedent to foreclosure. The single exception to the exclusive right of the trustee to foreclose is contained in article 11. The bondholders must be held to have agreed that the privilege to foreclose in their own names was not granted to them but was provided against instead. There was no infringement on the jurisdiction of a court. The validity of the provisions of article 11 of the trust deed is sustained by such decisions as *Farmers' Loan Co.* v. *Elevated Railroad Co.* 173 Ill. 439, and *Chicago, Danville and Vincennes Railroad Co.* v. *Fosdick,* 106 U. S. 47, 27 L. ed. 47.

Appellant next contends that the instant Gilruth was appointed receiver under section 11 of chapter 16a (Cahill's Stat. 1933, p. 160; Smith's Stat. 1933, chap. 16½, p. 200;) there was an actual or "practical" vacancy because the Englewood Trust and Savings Bank became incompetent to act as trustee; that the title to all its assets passed immediately to the receiver; that he is not given authority by that statute to administer the bank's trusts;

that the amendment to section 11 of the Banking act, providing that receivers shall make an accounting of all the trusts within a reasonable time and on behalf of the banks resign such trusts was passed in 1929, and would impair the obligation of the contract between the parties to the trust deed if construed to make receivers successors in trust, thus contravening section 10 of article 1 of the Federal constitution. Appellant cites *State* v. *Cantley*, 330 Mo. 942, 52 S. W. (2d) 397, *Young* v. *Bankers' Trust Co.* 250 Ky. 1, 61 S. W. (2d) 904, and *City Bank and Trust Co.* v. *Graff*, 175 Ga. 340, 165 S. E. 238, in support of the proposition that in those States the statutes dealt with in the respective decisions cited did not expressly authorize receivers or liquidating officers to administer trusts, and therefore such receivers had no such authority. It is sufficient to say that those statutes had no provision similar to that contained in section 11 of our Banking act, providing for the accounting in a reasonable time and resignation of trusts by the receiver on behalf of the bank.

Appellant also relies upon *Steenrod* v. *Gross Co.* 334 Ill. 362, *Nelson* v. *Toluca State Bank,* 334 id. 83, and *People* v. *Shurtleff,* 353 id. 248, in support of the proposition that appointing a receiver to take possession of the assets of a corporation and to distribute them is tantamount to dissolving the corporation by a decree in equity, and upon the *Shurtleff case, People* v. *Niehaus,* 356 Ill. 104, and *People* v. *Peoria Life Ins. Co.* 357 id. 486, to support the proposition that a bank receiver cannot administer trusts on behalf of a bank. In answer to these two propositions it should first be remembered that a construction of the words of section 11 of the Banking act as to resignation and accounting of a bank's trusts was not before us. Without in any way questioning the correctness of the decisions which contain the statement that the appointment of a liquidating receiver of a corporation is tantamount to a dissolution by a decree in equity, nevertheless the actual

dissolution of a banking corporation does not occur the instant the liquidating receiver of a State bank is appointed by the Auditor of Public Accounts. The corporation continues as a legal entity. *Rosenblatt* v. *Johnson,* 104 U. S. 462; 3 R. C. L. sec. 291, p. 660.

In answer to the contention that the amendment to section 11 of the Banking act of 1929 would impair the obligation of the contract contained in the trust deed if it be construed to mean that the receiver for the bank is to carry on the trust as a successor trustee, it is sufficient to say that no such construction can properly be made of the language of this section as thus amended. The legislature had the power to provide that the receiver for the bank should make an accounting within a reasonable time and resign the trust on behalf of the bank. The bank thus is recognized as remaining trustee and remaining in existence as a legal corporate entity. No succession as trustee is expressed or implied by such language. A salutary provision is made for the aid of orderly transaction of business looking to the welfare of parties whose rights might be adversely affected. Their contractual obligations are not impaired. There is, moreover, no charge in this bill that the receiver failed to act in a reasonable time, and no attempt has been made, if such were the case, to compel by appropriate court action the accounting and resignation of the trust by the receiver on behalf of the bank trustee. The bank continued to be the trustee until the receiver resigned the trust on its behalf on March 7, 1932.

In support of his contention that where the office of trustee is vacant it is not necessary to have a successor trustee appointed, and that a better practice is that the owner of the indebtedness should bring the foreclosure suit, appellant cites *Lill* v. *Neafie,* 31 Ill. 101, *Waughop* v. *Bartlett,* 165 id. 124, *Warnecke* v. *Lembca,* 71 id. 91, *Morse* v. *Holland Trust Co.* 184 id. 255, *Ettlinger* v. *Persian Rug and Carpet Co.* 142 N. Y. 189, 36 N. E. 1055, and *Hibbett*

v. *Charleston Heights Co.* 163 S. C. 327, 161 S. E. 499. In each of the first three above cited cases the only duty of the trustee was to exercise a power of sale given in the trust deed. In the case before us the duties of the trustee were not passive but it had many active duties to perform.

The trust deed is a part of the bill and provides, first, in case of a default for sixty days in payment of interest, at the option of the holder of any unpaid bond he may declare the whole sum secured by the trust deed due and payable; second, for other defaults by the debtor continuing sixty days after written demand by the trustee, the whole sum so secured may be declared due and payable at the option of twenty per cent of the holders of the outstanding bonds; third, for entry by the trustee and the dispossession of the mortgagor for a breach of the terms of the trust deed on application to the trustee by twenty per cent of the holders of bonds and for operation and management of the mortgaged premises by the trustee; fourth, that the last named remedy shall be cumulative with the remedy of foreclosure; fifth, for the protection of the trustee in taking possession and operating the mortgaged premises; and sixth, that in case of default the trustee may on his own motion take possession in case of such defaults. In part it reads as follows:

"Article 10. It shall not be obligatory on the trustee or its successor in trust to take possession of and to operate said property or to collect the rents, income and profits thereof, or to foreclose this trust deed, or to do or refrain from doing any act pursuant to the request or demand of any person until such person or the owner of one or more of the bonds then outstanding shall, by his writing duly signed by him, request the trustee so to act and shall deposit with the trustee the bonds of the party of the first part so held by him and secured hereby, and shall further give the trustee such assurance of indemnity for its disbursements and fees as it may require, but nevertheless

the trustee hereunder may at its election, in case of default as aforesaid, so take possession of and operate said property whether it has received said request or not, and in such case its charges, disbursements and expenses hereunder, as above specified, shall be a first lien upon the property hereby conveyed.

"Article 11. It shall be no part of the duty of said trustee to see to the proper execution or recording of this instrument or to do any act for the continuance of the lien hereof. It shall be under no obligation or duty to perform any act hereunder unless it is first reasonably indemnified, and it shall have a lien on said property prior to any other claim hereunder for its outlays, reasonable expenses and attorney's fees and for compensation for all services which it may at any time perform under this instrument. The exclusive right of action hereunder shall be vested in said trustee until refusal on its part to act, and no bondholder shall be entitled to enforce these presents in any proceeding in law or in equity until after demand has been made upon the trustee, accompanied by tender of indemnity as aforesaid and said trustee has refused to act in accordance with such demand. Said trustee shall not be bound to recognize any person as a bondholder until his bonds have been deposited with said trustee and until his title thereto has been satisfactorily established.

"Article 12. * * * The trustee herein, or its successors in trust, may resign or discharge itself or themselves of and from the trust hereby created by resignation in writing filed in the recorder's office of said county, and in case of a vacancy in the office of trustee or otherwise a successor or successors may be appointed by the holder or holders of a majority of the bonds then outstanding, by an instrument in writing duly signed and acknowledged by them, which said instrument shall be recorded in the office of the recorder of Cook county, Illinois, or in case said holder or holders do not agree in the appointment of a new

trustee within thirty (30) days after such vacancy shall occur, then the holder or holders of any of said bonds may apply to the circuit court of Cook county for the appointment of a new trustee or trustees upon such notice as such court shall prescribe to be given, in such manner or upon or to such party or parties, person or persons, as such court shall direct, or upon such notice as shall be in accordance with the rules and provisions of the court, and such trustee or trustees so appointed by such majority in interest of said bondholder or bondholders, or by such court, shall on its, his or their acceptance of its, his or their appointment, thereby and thereupon become and be vested with all the powers, rights, estates and interest granted or conferred upon said party of the second part herein by these presents and without any further assurance or conveyance whatsoever." * * *

In *Morse* v. *Holland Trust Co. supra,* a foreign trustee, together with two of the bondholders, joined as complainants in the bill to foreclose the trust deed. There was no exclusive right to foreclosure vested by the trust deed in the trustee. No issue of that nature was raised nor decided in the case. The contest was between the holders of the bonds secured by the trust deed under foreclosure, and the holder of a certificate of purchase on an execution sale on a judgment subsequent to the trust deed.

*Ettlinger* v. *Persian Rug and Carpet Co. supra,* involved the foreclosure of a chattle mortgage and not a real estate mortgage. There were only two bondholders, of whom the plaintiff was one. The trustee had left the United States and was insane. The trustee's only duty was to take possession of and sell the mortgaged personal property under the power of sale contained in the trust deed. Immediate action for the preservation of the rights of the plaintiff bondholder, whose rights were antagonistic to those of the other bondholders, was imperative.

In *Hibbett* v. *Charleston Heights Co. supra,* only eight bonds were secured by the trust deed, one held by the complainant and the other seven by the liquidating agent of the trustee. The trustee was originally the only bondholder and the trust was apparently created for his benefit.

The decisions relied upon from New York and South Carolina recognized the general rule that parties to a trust deed are bound by its terms, but the courts there held, because of the peculiar and unusual circumstances present in those cases, that the facts justified foreclosure by the noteholders or bondholders, rather than by a trustee, in order to prevent fraud and collusion or to prevent a miscarriage of justice.

The complainant filed his bill only four days after the bank, by its receiver, resigned as trustee. Kilpatrick was not appointed successor trustee until three months and ten days later. Appellant urges that inasmuch as Kilpatrick was not appointed successor trustee within thirty days after such resignation of the bank his appointment is a nullity. Appellant insists that the power to appoint a successor trustee under the provisions of article 12 of the trust deed is limited to the period of thirty days next succeeding the day on which the vacancy occurred. We cannot agree with this construction of that article. The thirty-day period is a restrictive period, during which the hands of each and every bondholder are stayed from applying to the circuit court for the appointment of a successor trustee. If no bondholder later applies to the court to fill such vacancy the majority of the bondholders have the continuing right to choose a successor trustee.

It is contended that "otherwise," as used in article 12, "and in case of a vacancy in the office of trustee or otherwise, a successor or successors may be appointed," created a condition upon the appointment of a receiver for the bank which entitled the bondholders to appoint a successor trustee, and that therefore after the filing of the present

bill the remaining bondholders lacked authority to appoint a successor trustee on June 17, 1932. Appellant attributes to that word the meaning that it contemplated incompetence, inability or disqualification. If we assume that it did, appellant's position is not improved. The appointment of a receiver for the bank did not of itself automatically create any incompetence, inability or disqualification as trustee on the part of the bank as a corporate entity, but section 11 of the Banking act maintained the bank's status as trustee until such reasonable time as the bank, through its receiver, should resign its trusteeship. We have carefully examined the cases from foreign jurisdictions cited by appellant in support of this contention. Each case involves some public office where there was an interregnum by actual or civil death or an absence from such office. The cases as applied to the facts and contract here do not sustain the position of appellant.

It is also urged by appellant that his bill prayed for the appointment of a new trustee. The situation would be rather unique to have the court appoint a trustee and then to have the trustee step out of the decree appointing him and walk into the lawsuit to become either a party complainant or party defendant in the same proceeding in which he was appointed. The difficulty with appellant's position is, that although his bill requested the appointment of a successor trustee "if necessary" it was prematurely filed, and at the time it was filed the court was without jurisdiction to entertain a bill for that purpose.

Appellant urges that the appointment of a trustee to succeed the bank was a useless act, and that equity will not require the doing of a vain and useless thing. The argument is founded upon the supposition that the foreclosure of the bond issue and the sale to satisfy the indebtedness are the primary result to be achieved by the bondholders. Supplementary to this, appellant urges that the appointment of a new trustee and the demand upon

him to foreclose would be a useless act. The trust deed constituted the contract between the bondholders and was intended to serve them all alike. Ordinarily the small bondholder is not in a financial position to bid in the property at a foreclosure sale in the absence of cash bidders. The court will take judicial notice that in this period of economic distress there is a great depreciation in the value of real estate and that property sold at foreclosure sales brings a much lower price than in a normal time. (*Atchison, Topeka and Sante Fe Railway Co.* v. *United States*, 284 U. S. 248, 76 L. ed. 273; *Morris Plan Bank* v. *Henderson*, 57 Fed. (2d) 326.) This was not a passive trust and the trustee had duties, obligations and responsibilities. There is no allegation of facts to show that a demand upon the new trustee for the performance of his duties would have been either useless or unavailing.

It is urged by appellant (1) that Kilpatrick's appointment as trustee was made by a bondholders' committee; that such power is personal to the bondholder and he can not delegate it to another; that therefore the appointment is a nullity, and that he has no power, as trustee, to resist or contest appellant's bill; (2) that the word "holder," as applied in article 12 of the trust deed, means "owner," and the bondholders' committee was not the owner of the bonds and therefore could not appoint the trustee.

In the first subdivision of the present contention appellant is confronted with the following well-pleaded averments of appellee's intervening petition: "(3) That thereafter, on, to-wit, the 17th day of June, A. D. 1932, the holders of a majority, in amount, of bonds outstanding and secured by said trust deed, by an instrument in writing duly signed and acknowledged by them and duly accepted in writing thereon by your petitioner, and afterwards recorded in the office of the recorder of Cook county, Illinois, on June 18, 1932, as document No. 11104681, appointed your petitioner as successor trustee to West Engle-

wood Trust and Savings Bank under said trust deed, and by reason of the foregoing and of the terms of said trust deed he became, and is now, vested with all the powers, rights, estates and interests of said original trustee."

The writing making the appointment is attached as an exhibit to and made a part of the intervening petition. There is nothing in such instrument which modifies or detracts from the force of the quoted averments, but to the contrary the instrument recites that the persons signing the same are "the actual present owners of more than a majority of the now outstanding bonds secured by the said trust deed."

There is nothing in the pleadings tending to show any delegation of authority on the part of any bondholder of his right to select a successor trustee. In support of his position the appellant cites *Holcomb* v. *Nettleton,* 35 S. W. (2d) (Tex.) 745, *Scottish American Manf.' Co.* v. *Butler,* 99 Miss. 56, 54 So. 666, and *Watson* v. *Perkins,* 88 Miss. 64, 40 So. 643. The issues decided there are not analogous to those before us. Each of these decisions recognizes the right of the holder of secured obligations to appoint a trustee.

Appellant cites no authorities to sustain the second point of his contention. An individual may be the holder of a note and as such maintain a suit thereon, or a bill to foreclose a mortgage securing such note, even though such holder has no beneficial interest in the note. (*Bourke* v. *Hefter,* 202 Ill. 321; *Hirsh* v. *Arnold,* 318 id. 28.) These bonds were bearer bonds and possession of them was *prima facie* evidence of ownership. (*Henderson* v. *Davisson,* 157 Ill. 379.) The holders of the bonds here were the legal owners thereof for the purpose of appointing a trustee although the equitable ownership may have been in others, and as such owners the present holders had the legal right to make such an appointment and the appointment is valid.

Appellee contends that the chancellor erred in refusing him leave to file a supplemental bill setting up the expiration of the thirty-day period within which, alone, he contends the holders of a majority of the bonds had the exclusive right to appoint a successor trustee and their failure to do so. We have heretofore held that no right of action existed in the complainant at the time his bill was filed. No act or event happening subsequent to March 11 could vest appellant with a right of action as of that date. *Brownback* v. *Keister,* 220 Ill. 544.

For the reasons herein stated we are of the opinion that the judgment of the Appellate Court is correct, and such judgment is affirmed.               *Judgment affirmed.*

STONE, C. J., and SHAW, J., dissenting.