Joseph G. Dillon, Appellant, v. Elbert E. Elmore et al., Defendants. Benjamin G. Kilpatrick, as Successor-Trustee to West Englewood Trust and Savings Bank, Appellee.

Gen. No. 36,986.

GRIDLEY, P. J., dissenting.

Opinion filed July 6, 1934.

CONCANNON & DILLON, for appellant.

KIRKLAND, FLEMING, GREEN & MARTIN, for appellee; WILLIAM WILSON, B. S. MARIMON and L. W. TUESBURG, of counsel.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

March 11, 1932, complainant, the owner and holder of 12 $1,000 bonds, of a total issue of $175,000 (executed and delivered by Elbert E. Elmore December 26, 1923, maturing 10 years thereafter and secured by a trust deed conveying certain improved real estate to the West Englewood Trust & Savings Bank, an Illinois banking corporation, as trustee) filed a bill in the superior court to foreclose the lien of the trust deed on his own behalf and on behalf of all owners and holders

of other bonds of said issue. December 12, 1932, by leave of court, Benjamin G. Kilpatrick, claiming that he had duly been appointed as successor-trustee to said bank, filed his intervening petition in the cause, praying that complainant's bill be dismissed. To the petition complainant filed a demurrer. June 10, 1933, after argument, the court overruled complainant's demurrer to the petition and complainant electing to stand on the demurrer a decree was entered dismissing complainant's bill for want of equity, ''without, however, prejudicing the rights of the owner and holder of the bonds described in said bill to participate in and receive his proportionate part of any moneys which may at any time be available for the payment of said bonds.'' From the decree complainant prosecutes the present appeal.

Inasmuch as Kilpatrick's petition or motion to dismiss complainant's bill is to be treated as a demurrer to the bill and as admitting all well-pleaded averments of fact therein (see *Gurnett v. Mutual Life Ins. Co.,* 268 Ill. App. 518, 520; *Leonard v. Arnold,* 244 Ill. 429, 432–3), and as on complainant's demurrer to Kilpatrick's petition all well-pleaded averments of fact therein are also to be considered as admitted, and as no evidence was heard by the chancellor on the motion, this court in deciding the present appeal must look both to the bill and petition for the material and well-pleaded facts.

In complainant's bill to foreclose, after alleging the execution and delivery by Elmore of the 175 bonds (all maturing on December 26, 1933, and bearing interest at six per cent per annum payable semiannually as evidenced by attached coupons) and his execution and delivery of said trust deed conveying as security the property in question together with the rents, issues and profits thereafter accruing to the West Englewood Trust & Savings Bank, as trustee, the trust deed

is set out in full, in which there are the following provisions (italics ours):

"'Article 6. . . . That in case of default for a period of 60 days in making payment of any of said bonds, either of principal or interest, then the whole of said principal sum secured hereby shall at once (without notice thereof to any person interested) at the option of the holder *of any one of said bonds* then unpaid become due and payable, and in case of default in the performance of any other covenant or agreement herein made by said first party and such default continuing for 60 days after written demand by or through the Trustee on said first party for the performance of the covenant so broken, then the whole of said principal sum hereby secured shall at once, at the option (without notice thereof to first party) of the holder or holders of 20% of the bonds herein described then unpaid, become due and payable. . . .

"'Article 7. In case of any such default the second party or its successors in trust, or its or their agents or attorneys, shall have the right (on application of the *legal holder of any one of said bonds* in case of default for 60 days in the payment of principal or interest as above set forth, and on application of the legal holder or holders of 20% of the bonds herein described then unpaid in case of 60 days' default in the performance of any other covenant herein made) to enter and take possession of said premises and to expel and remove therefrom said first party and to collect the rents thereof and manage and operate said premises. . . .

"'Article 8. The foregoing provision for entry and operation *is cumulative with the ordinary remedy of foreclosure* and upon default being made as provided in this trust deed and upon request in writing of the holder or holders of *one or more* of the then outstand-

ing bonds it shall be the *duty* of the Trustee to institute a suit for foreclosure. . . .

"Article 10. It shall not be obligatory upon the Trustee to take possession of said property or to foreclose this trust deed or to do or refrain from doing any act pursuant to the request of any person *until such person or the owner of one or more of the bonds* then outstanding *shall in writing request the Trustee so to act* and deposit with the Trustee the bonds so held by him and shall further indemnify said Trustee for its disbursements and fees, but the Trustee may at its election in case of default as aforesaid take possession of and operate said premises whether it has received said request or not and in such case its charges, disbursements and expenses hereunder shall be a first lien upon said premises.

"Article 11. It shall not be the duty of the Trustee to see to the execution or recording of this instrument or to do any act for the continuance of the lien hereof and shall be under no obligation to perform any act hereunder unless it is reasonably indemnified, and it shall have a prior lien on said premises for its outlays, reasonable expenses, and attorneys' fees and for compensation for any services which it may perform. The *exclusive right of action hereunder shall be vested in said Trustee until refusal on its part to act, and no bondholder shall be entitled to enforce these presents in any proceeding in law or equity until after demand has been made upon the Trustee accompanied by tender of indemnity as aforesaid, and said Trustee has refused to act in accordance with such demand. Said Trustee shall not be bound to recognize any person as a bondholder until his bonds have been deposited with said Trustee and until his title thereto has been satisfactorily established.*

"Article 12. . . . The Trustee may resign from the trust hereby created by resignation in writing filed in the Recorder's Office of said County, and in case of a

vacancy in the Office of Trustee a successor may be appointed by the holder or holders of a *majority of the bonds then outstanding* by an instrument in writing duly signed and acknowledged by them and recorded in the Office of the Recorder of Cook County, Illinois, *or in case said holder or holders do not agree in the appointment of a new Trustee within 30 days after such vacancy shall occur then the holder or holders of any of said bonds may apply to the Circuit Court of Cook County, for the appointment of a new Trustee upon such notice as such court shall* prescribe to be given in such manner or upon or to such party or parties as such court shall direct or upon such notice as shall be in accordance with the rules and provisions of the court and such Trustee so appointed by such majority in interest of said bondholder or bondholders or by such court shall on his acceptance of his appointment thereby become and be vested with all the rights, powers and estates granted to the party of the second part herein by these presents and without any further assurance or conveyance whatsoever. . . . ''

Complainant's bill further alleged in substance that he is the owner and holder of 12 of the bonds (giving their numbers), and of the interest coupons thereof maturing on and after December 26, 1931; that default has occurred and continued in the payment of the coupons due December 26, 1931, on the 12 bonds and on the other bonds of the series; that complainant has elected to declare immediately due and payable all of the 175 bonds now outstanding; that no part of the general taxes assessed against the property for the years 1929 and 1930 has been paid; that the property was sold February 24, 1932, for the nonpayment of the second instalment of a certain special assessment warrant No. 53328; that there is due to complainant, as the owner of the 12 bonds, $12,360 interest, etc.; that there is also due and owing to the owners of other

bonds such sums as may appear unpaid for accrued interest, etc.; that in addition there is or will become . due to complainant, or to said other owners of the remaining bonds, all sums advanced or to be advanced for various expenses and costs (enumerating them); that all of these sums constitute a valid lien upon the property, superior to the rights and interests of any other parties to this suit; that the property is improved with a three-story brick building containing eight stores and 24 offices or apartments, and is of doubtful security for the indebtedness secured by the trust deed; that the bonds and interest coupons so secured, other than those owned by complainant, are owned by divers persons living in widely scattered localities; that one John M. Lang is the owner of $5,000 of the bonds and one M. J. Morrissey of $6,000 of the bonds; that the names of other owners of the bonds are unknown to complainant and cannot be ascertained by him; that the names of the beneficiaries of the trust, upon which the legal title to the property is held by Foreman-State Trust & Savings Bank as successor-trustee, are unknown to complainant and upon diligent search cannot be ascertained by him; that by mesne conveyance the property was by deed, dated May 27, 1927, conveyed to the Foreman Trust & Savings Bank, as trustee, under the provisions of a trust agreement known as trust number 2882; that December 14, 1929, the State Bank of Chicago and said Foreman Bank were duly consolidated under the name of Foreman-State Trust & Savings Bank; that said last named bank as successor-trustee, and under said trust agreement, is now the record owner of the title to the property; but that its interest therein is subject and subordinate to complainant's rights and the rights of the owners of others of said bonds and coupons not owned by complainant.

Complainant's bill further alleged in substance that when on December 26, 1923, the trust deed in question

was executed and delivered to the West Englewood Trust & Savings Bank, as trustee, that bank was a duly organized Illinois banking corporation and duly qualified to act as a trust company, and continued to be so qualified until June 9, 1931; that on that day, the auditor of public accounts of Illinois found that the bank's condition was such that its capital stock had become impaired, etc., and said auditor on June 9, 1931, assumed control of the bank and appointed one Irwin T. Gilruth as receiver thereof; that July 22, 1931, Gilruth's appointment as such receiver was duly approved by the superior court of Cook county in a suit instituted by the auditor July 20, 1931, wherein the auditor prayed that said bank be dissolved, etc., in accordance with the statute, etc.; that thereafter Gilruth, having qualified as receiver of the bank, and pursuant to the provisions of section 11 of the Illinois Banking Act, Cahill's St. ch. 16a, ¶ 11, did, by instrument dated March 7, 1932 (i. e., four days before complainant's present bill was filed), "resign on behalf of said Bank the trust created by said trust deed," which instrument was duly recorded on the same day; and that "by reason of the appointment of said receiver (Gilruth), the said West Englewood Bank did, on July 22, 1931, become, and since that date has been, and now is, disqualified from acting as Trustee under the terms of said trust deed, and that no person has been appointed to succeed said West Englewood Trust & Savings Bank, as Trustee under said trust deed."

The prayer of complainant's bill is that the various parties named as defendants answer the bill, etc.; that a receiver of the property be appointed to collect the rents, issues and profits; that an account be taken under the court's direction of the amount due to complainant as owner of said 12 bonds and matured coupons, and of the amounts due to the respective owners of other bonds and coupons, etc.; that in default of payment thereof the usual decree of foreclosure and

sale be entered, etc.; that the court, "if it deem the same necessary, appoint a Successor-Trustee to said West Englewood Trust & Savings Bank"; that "said Successor-Trustee, if appointed, may be made a party to this proceeding"; and that complainant "may have such other and further relief as the nature of his case may require," etc.

In the intervening petition of Benjamin C. Kilpatrick, as successor-trustee to West Englewood Trust & Savings Bank, verified by an agent and filed December 12, 1932 (i. e., about nine months after the filing of complainant's bill), after alleging the closing of the West Englewood Bank by the Illinois State auditor, the appointment of Gilruth as receiver of the bank, and the receiver's resignation of the bank's trusteeship under the trust deed on March 7, 1932, all as averred in complainant's bill as aforesaid, further alleged in substance as follows:

3. That on June 17, 1932 (i. e., more than *three months after* the filing of complainant's bill) the *holders* of a *majority* in amount of bonds outstanding and secured by the trust deed, "by an instrument in writing signed and acknowledged by them and accepted in writing thereon by your petitioner," recorded June 18, 1932, "appointed your petitioner as successor-trustee to said West Englewood Bank under said trust deed"; and that "by reason of the foregoing and of the terms of said trust deed, petitioner became and is now vested with all the powers, rights, estates and interests of said original trustee." A copy of said appointment of successor-trustee "is attached hereto, marked Exhibit 'B', and *made a part hereof.*"

4. That said trust deed provides, *inter alia* as follows: (Here is set forth in full that portion of Article 12, above quoted in this opinion.)

5. That complainant's said bill "was filed on March 11, 1932, *but four days after* the resignation of Gilruth

as receiver in behalf of said West Englewood Bank, Trustee under said trust deed.''

6. That petitioner, as successor-trustee, on or about June 18, 1932, entered into and took possession of the real estate in question, and ''is and has been collecting the rents, issues and profits from said premises for the benefit of all of the holders of bonds secured by said trust deed, including complainant.''

7. That the ''holder of *one* of the unpaid bonds,'' on or about June 20, 1932, by an instrument in writing delivered to petitioner, declared the whole of the principal secured by the trust deed to be at once due and payable and ''requested petitioner to institute suit for the foreclosure of said trust deed, for the benefit of the owners and holders of all of the unpaid bonds secured thereby, agreeing to indemnify petitioner,'' etc. ''A copy of said demand to foreclose is hereto attached, marked Exhibit 'C', and made a part hereof.''

8. That in compliance with the request and on June 20, 1932, petitioner filed his bill to foreclose said trust deed in the superior court against Elmore et al., cause No. 559,902, a copy of which bill is attached hereto, marked Exhibit ''D'', and made a part hereof.

9. That complainant's bill in the present case ''shows upon its face that the exclusive right of action is in the trustee appointed under said trust deed, the provisions of which trust deed relating thereto being as follows:'' (Here are set forth those provisions of Article 11 of the trust deed which are above set forth in this opinion and which are there italicized.)

10. That complainant's bill ''alleges no demand upon the Trustee to foreclose, nor does it allege any demand upon said West Englewood Bank, or upon said Gilruth as receiver thereof, to resign said trusteeship under the trust deed, nor does it allege any refusal, on the part of said West Englewood Bank as trustee, or on the part of said Gilruth as receiver there-

of, to resign said trusteeship under said trust deed for and on behalf of said West Englewood Bank as trustee''; but that, on the contrary, complainant's bill alleges ''that by reason of the appointment of said receiver (Gilruth), the said West Englewood Bank did, on July 22, 1931, become, and since that date has been, and now is, *disqualified from acting as Trustee* under the terms of said trust deed, and that no person has been appointed to succeed said West Englewood Trust & Savings Bank, as Trustee under said trust deed.''

The prayer of the intervening petition is (a) that petitioner be given leave to file instanter said petition, and (b) that ''an order be entered herein dismissing complainant's bill of complaint filed in the above entitled cause.''

In urging an affirmance of the decree appealed from, which dismissed for want of equity complainant's bill to foreclose the lien of the trust deed involved, after the court had overruled complainant's demurrer to Kilpatrick's intervening petition as the claimed successor-trustee to the West Englewood Bank, Kilpatrick's counsels' main contention is, in substance, that complainant (as the owner and holder of 12 of the 175 bonds secured by the trust deed) had no right to file the bill on behalf of himself and other owners and holders of the defaulted indebtedness because, under the provisions (above quoted in italics) of Article 11 of the trust deed, the exclusive right of action was vested in the named trustee, of which Kilpatrick afterward became the duly appointed successor and acted as such.

Counsel for complainant, in urging a reversal of the decree appealed from, after stating that the admitted facts disclose that at the time complainant filed his bill the office of trustee under the trust deed was vacant, contends, in substance (1) that the provisions of Article 11 of the trust deed above mentioned are not to be applied to the admitted facts, and complainant as one of the bondholders had an absolute right to file his

foreclosure bill, because: (a) Where the office of the trustee is vacant and the only relief sought is the proper foreclosure of the trust deed it is not necessary to have a successor-trustee appointed merely for the purpose of bringing the foreclosure proceeding, and the better practice is to have the owner or owners of the indebtedness institute such proceeding; (b) it is the recognized law that courts never require the doing of a useless act even in cases involving contractual obligations, and in view of the provisions of Article 8 of the trust deed (wherein it is made the duty of the trustee, upon default having occurred in the payments of the indebtedness, to institute a foreclosure proceeding upon the written request "of the holder or holders of *one or more* of the then outstanding bonds"), it would be the doing of a useless thing on the part of such holder or holders of the indebtedness to proceed to appoint a successor-trustee merely for the purpose of afterward demanding of such appointee that he institute a foreclosure proceeding, when under the law the foreclosure proceeding could just as well be instituted by such holder or holders; and (c) whether or not complainant had the right to file his bill to foreclose must be determined by the facts existing at the date of such filing, and, if such bill was rightfully filed, the fact that Kilpatrick on June 17, 1932 (about three months after the filing of complainant's bill), was appointed successor-trustee by a committee of other bondholders, could not change the former existing situation, and should not militate against complainant maintaining his bill. And complainant's counsel further contend in substance (2): That the purported appointment of Kilpatrick, as successor-trustee, was not made in accordance with the provisions of the trust deed in that (a) it was not made within 30 days after March 7, 1932 (when Gilruth as receiver of the West Englewood Bank resigned its said trust); (b) that the appointment was made by the members of a bond-

holders' committee, and not by the bondholders themselves, who should act personally and could not delegate to others their power of appointment given by the trust deed; and that, hence, Kilpatrick, as a successor-trustee so appointed, is in no position to contest complainant's right to file the present foreclosure bill on his own behalf and that of other bondholders similarly situated.

Complainant urges that the provisions of Article 11 of the trust deed vesting the trustee with the exclusive right to institute foreclosure proceedings until its refusal to act, and prohibiting an individual holder of a bond or bonds from filing a bill to foreclose, either in his own behalf or as a representative of all of the bondholders, until after the wrongful refusal by the trustee to comply with the bondholder's demand to foreclose, must be disregarded and held for naught because of the admitted facts in this cause, and that he as one of the bondholders had an absolute right to file his fore-closure bill. What are the admitted facts? It is true that the interest coupons due December 26, 1931, of all of the outstanding bonds were in default and that any bondholder had the right under the terms of the trust deed because of that default to accelerate the payment of all of the bonds. It is also true that a vacancy existed in the office of trustee by reason of the resignation of the insolvent bank trustee by its receiver, Gilruth, just four days prior to the filing of complainant's bill to foreclose. These are the admitted facts relied upon by complainant. But it is also an admitted fact that the trust deed anticipated that such a vacancy might occur and by its terms the parties to the contract, including complainant, specifically provided the method and manner of electing a successor-trustee. The majority of the bondholders had the positive right and privilege to fill the vacancy within 30 days after its occurrence without interference

of any kind on the part of any bondholder or minority bondholders. After the expiration of 30 days any bondholder might petition the circuit court to appoint such successor. If no bondholder availed himself of his right to so petition the court, the majority of the bondholders had the continuing right to make the appointment, which was exercised by such majority in apt time in this case. The 30 days above referred to is not a limitation upon action by the bondholders, but is a limitation upon the holder of a bond applying to the circuit court. This cannot be done until after the expiration of 30 days. (*Valauskis v. Crane & Moreland Real Estate Improvement Co.*, 270 Ill. App. 611 [Abst.].)

It is difficult to reconcile complainant's asserted right to file a bill to foreclose the trust deed with the restriction therein contained that precluded him from even applying to the court for the appointment of a successor-trustee until the vacancy in the office of trustee had existed for at least 30 days.

Complainant's bill contained no allegation that he could or would have suffered any harm or been deprived of any right by conforming to the plain, unmistakable terms of the trust deed to which he was a party and the orderly procedure outlined therein.

Complainant does assert that where the office of trustee is vacant and the only relief sought is the proper foreclosure of the trust deed, it is not necessary to have a successor-trustee appointed, but that the better practice is to have the owner or owners of the indebtedness institute such proceeding. In support of this contention he relies upon the cases of *Dorn v. Colt*, 180 Ill. 397; *Cheltenham Improvement Co. v. Whitehead*, 128 Ill. 279; *Surine v. Winterbotham*, 96 Ill. App. 123; *Town v. Alexander*, 85 Ill. App. 512; *Frink v. Neal*, 37 Ill. App. 621; *Lill v. Neafie*, 31 Ill. 101; *Waughop v. Bartlett*, 165 Ill. 124; *Warnecke v. Lembca*, 71

Ill. 91; and *Morse v. Holland Trust Co.*, 184 Ill. 255. We have carefully examined these cases and find that the provisions of the mortgage or trust deed therein involved are not similar to the provisions of the trust deed in the case before us. In these cases the trust deed contained no restrictions similar to those contained in Article 11 above quoted. That article expressly reposed in the trustee or properly appointed successor-trustee the exclusive right of action under the trust deed in behalf of all the bondholders and prohibited action by any 'bondholder or bondholders except upon the trustee's refusal to act upon proper demand. The authorities of other jurisdictions cited in support of the instant contention recognized the general rule that parties to a trust deed are bound by its terms and restrictions, but because of the peculiar and special circumstances prevailing in those cases justified permitting the holder or holders of the notes or bonds involved to foreclose rather than the trustee or successor-trustee, to circumvent fraud and collusion or to avoid a miscarriage of justice, whereby the rights of the owners of such notes or bonds would be impaired or destroyed and such owners left without reasonable means of redress.

It has been uniformly held by this court in passing upon provisions similar to those contained in this trust deed that no individual bondholder is entitled to file a bill to foreclose except upon the specified conditions. (*Valauskis v. Crane & Moreland Real Estate Improvement Co., supra; Reliance Bank & Trust Co. v. Dalsey*, 263 Ill. App. 546.) The provisions of the trust deed limiting the right of a single bondholder to foreclose are valid. (*Rosenzweig v. Roitman*, 266 Ill. App. 124; *Seibert v. Minneapolis & St. L. Ry. Co.*, 52 Minn. 148, 53 N. W. 1134; *Chicago, Danville & Vincennes R. Co. v. Fosdick*, 106 U. S. 47; *Muren v. Southern Coal & Mining Co.*, 177 Mo. App. 600, 160 S. W. 835; *Pearlman*

*& Co. v. Lincoln-Belmont Bldg. Corp.,* 251 Ill. App. 135; *Belleville Savings Bank v. Mercantile Trust Co.,* 194 Ill. App. 175; *Romberg v. Interstate Independent Telephone & Telegraph Co.,* 200 Ill. App. 509.)

It is not a question of whether complainant could file a bill to foreclose just as efficaciously as the successor-trustee, but rather of his absolute lack of authority to file such a bill under the terms of the trust deed in question.

But complainant asserts that the law will not require the doing of a useless act and that if the successor-trustee was appointed under the provisions of the trust deed it would be his duty, default having occurred in the payment of the indebtedness, to institute a foreclosure proceeding upon the written request of the holder or holders of one or more of the outstanding bonds, and that since complainant could file the bill to foreclose just as well it would be entirely useless to appoint a successor-trustee for that purpose. It is sufficient answer to this contention to state that when this trust deed was executed the parties to the contract contemplated that a disinterested trustee could and would better serve the interests of all of the bondholders than would any individual bondholder. Complainant's resort to the maxim that a court of equity will not require the doing of vain and useless things cannot avail under the facts of this case. As applicable to this case the rule might be better stated to be that equity will not do that which will be of no benefit to the party asking it and only be a hardship on the party coerced. Compelling compliance with the terms of the trust deed means a distinct advantage and benefit to all holders of outstanding bonds and could not possibly result in any harm or hardship to complainant who will share in the distribution of the proceeds of the foreclosure along with the holders of all other outstanding bonds. No case has been cited by com-

plainant under the useless act doctrine that is at all comparable with this case on the facts.

The general rule, we think, as applied to contracts is stated in 13 Corpus Juris, paragraph 744, page 661, as follows:

"A demand for a performance is unnecessary where it is apparent that it would be unavailing, as where there has been a prior absolute refusal, or where the party from whom performance is due has placed it out of his power to perform; or where demand has been waived."

The record presented here fails to disclose that a demand for performance after the proper appointment of a successor-trustee would be unavailing. In the instant case we find neither refusal to perform, inability to perform nor any waiver of demand of performance. It also may well be that, in addition to what complainant characterizes as the mere passive duty of the successor-trustee of filing the bill to foreclose, such trustee will be called upon to perform some very active duties for the protection of all the bondholders, if and when a sale of the property under foreclosure takes place and thereafter. (*Straus v. Chicago Title & Trust Co.,* 273 Ill. App. 63.)

Complainant concedes that he could not qualify for any active duty of the trustee, but counters with the assertion that his bill contained a prayer for the appointment of a successor-trustee if the court deemed such an appointment necessary. The difficulty with this position is that complainant's bill was filed only four days after the vacancy occurred and at a time when he had no more right to petition for the appointment of a successor-trustee than he did to file the bill to foreclose. Under the terms of the trust deed complainant's bill afforded the trial court no jurisdiction to appoint a successor-trustee.

If complainant's position in this cause is tenable, the same argument might just as consistently and with as

much force be advanced in favor of the proposition that an individual bondholder had the right, as the representative of all the bondholders, to file a bill to foreclose when no vacancy existed in the office of trustee, when the only relief sought was the proper foreclosure of the trust deed. While there was a vacancy in the office of trustee at the time complainant's bill was filed, the trust deed anticipated such a contingency and provided the method and manner of appointing a successor-trustee to fill the vacancy. If complainant's contentions were sound the entire purpose served by trust deeds would be destroyed. Their provisions could be emasculated and abrogated at will. Contracts are not made with the expectation that they will be broken, but with the expectation that they will be performed. (Williston on Contracts, paragraph 768, page 1467.)

We adhere to our opinion, frequently expressed, that where the trust deed gives exclusive right to the trustee to institute foreclosure proceedings no individual bondholder may do so. To permit individual bondholders each to file his bill and move for the appointment of a receiver would make confusion worse confounded. Aside from the question of confusion, complainant's bill to foreclose and request for the appointment of a receiver must rest upon some clear right. This right he did not have when he filed his bill. (*Valauskis v. Crane & Moreland Real Estate Improvement Co., supra.*)

Complainant's contention that the successor-trustee's appointment was not made in accordance with the provisions of the trust deed, in that it was not made within 30 days after the vacancy occurred, is without merit. We have heretofore indicated our views in this regard.

Complainant's final contention that the successor-trustee's appointment was made by the members of the bondholders' committee and not by the bondhold-

ers themselves, who should act personally and could not delegate their power of appointment, and that, therefore, Kilpatrick's appointment as successor-trustee being void gave him no right to contest complainant's right to file his bill in behalf of himself and other bondholders similarly situated, is likewise without merit.

In support of this last contention complainant relies upon *Holcomb v. Nettleton* (Tex. Civ. App.), 35 S. W. (2d) 745; *Scottish American Mtg. Co. v. Butler,* 99 Miss. 56, 54 So. 666; and *Watson v. Perkins,* 88 Miss. 64, 40 So. 643. In the *Holcomb* case, where the trust deed contained a power of sale and provided for the appointment of a substitute trustee in certain contingencies by the holder of the secured notes, and where the notes were neither assigned nor delivered, but the trust deed was transferred to an attorney in fact who assumed to sell the property under the terms of the trust deed, the court, quoting from *Michael v. Crawford,* 108 Tex. 352, 193 S. W. 1070, by which it held itself bound, said "authority to make a substitution of trustees without other formality than an appointment in writing, requires the appointment to be made by the holder of the note." In the *Watson* case, under a practically similar factual situation, the court held: "But since such power of appointment has been held to be purely personal and one that cannot be delegated, the attorney in fact of the holder of these notes had no right to name a 'substitute' trustee, and such an appointment being void, the sale made by the trustee was void." In the *Scottish American Mtg. Co.* case, it was held that the attorney in fact of the beneficiary of the trust deed could not appoint a "substitute" trustee where the deed provided for the appointment "by the beneficiary or any holder of the notes secured." In none of these cases was the question presented for determination analogous to that pre-

sented here. In fact all three cases and the cases cited therein recognized the right of the holders of the secured indebtedness to appoint a "substitute" trustee.

In the instant case complainant strenuously insists that under the provision in Article 12 of the trust deed that a holder or holders of a majority of the outstanding bonds had the right to appoint a successor-trustee the parties to the contract meant the owner or owners of such bonds. No case has been cited and a diligent search has failed to reveal one that has ever so held in construing similar provisions of a trust deed. This court held in *Schatzkis v. Rosenwald & Weil,* 267 Ill. App. 169:

"It is undisputed that the bonds described in the demand had been deposited with and were in the possession of the Chicago Title & Trust Company as depositary for the Bondholders' Protective Committee. Possession of the bonds was prima facie evidence of ownership. (*Hoff v. Dougherty,* 243 Ill. App. 159, and cases cited.)"

In *Hoff v. Dougherty, supra,* the court held that possession of a negotiable note is prima facie evidence of ownership. If, under the terms of the trust deed, ownership of the bonds was requisite to the appointment of a successor-trustee, we would be impelled to conclude that the individuals comprising the bondholders' protective committee were, at least, prima facie clothed with ownership for the purpose of appointing a successor-trustee.

If the rule were otherwise how could the bondholders function to protect their rights under the trust deed? Complainant alleged in his bill "that the bonds and interest coupons secured by such trust deed . . . are owned by divers persons living in widely scattered localities." These bonds were payable to bearer and "shall pass by delivery unless registered on the books of the West Englewood Trust & Savings Bank." It

is admitted that the majority of the bonds were delivered to individuals composing the bondholders' protective committee and that those individuals were the holders of such bonds at the time the successor-trustee was appointed by them. Being the holders of the bonds, we think that they had the right under the trust deed to appoint a successor-trustee. The efficacy of a bondholders' protective committee as an instrumentality for protection of noteholders or bondholders who are numerous, widely scattered and unorganized, and, therefore, impotent to effectively protect their own interests from sacrifice at a forced sale precipitated by a third party in a demoralized market, has generally been recognized by the authorities in all jurisdictions. (*Straus v. Chicago Title & Trust Co., supra.*)

The following well pleaded averments of the successor-trustee's intervening petition are admitted by complainant's demurrer:

"That on to-wit: June 17th, 1932, the holders of a majority in amount of bonds outstanding and secured by said trust deed, by an instrument in writing signed and acknowledged by them and accepted in writing thereon by your petitioner, and recorded in said Recorder's office on June 18, 1932, as Document No. 11104681, appointed your petitioner as successor-trustee to said Bank under said trust deed and by reason of the foregoing and of the terms of said trust deed became and is now vested with all the powers, rights, and interests of said original trustee. A copy of said appointment of successor-trustee is attached hereto, marked Exhibit 'B' and made a part hereof.''

We have carefully examined Exhibit "B" and found nothing therein to detract from or alter the force and sufficiency of the admitted facts as above alleged. Further technical criticisms are made which are without merit. The facts stated in the intervening petition and admitted by complainant show the proper ap-

pointment and acceptance of a successor-trustee, and that complainant's bill to foreclose was filed by him without even the color of right.

For the reasons indicated, we are of the opinion that the chancellor was justified in overruling complainant's demurrer to the successor-trustee's intervening petition and dismissing complainant's bill for want of equity.

The decree of the superior court is affirmed.

*Affirmed.*

SCANLAN, J., concurs.

GRIDLEY, P. J., dissenting: On May 1, 1934, an opinion of this court was filed and an order entered, for reasons stated in the opinion, that the decree appealed from be "reversed" and that the cause be "remanded with directions . . . to sustain complainant's demurrer to said intervening petition and to dismiss said petition, and for such further proceedings on complainant's bill as to equity shall appertain." Subsequently, a rehearing was allowed. After due consideration, I am unable to agree with the conclusions reached by a majority of the court in the present opinion. I still think that the decree appealed from should be reversed and the cause be remanded with directions as stated.